# Crawford's Estate.

*Wills—Construction—Legacies—Specific and demonstrative legacies—Trusts and trustees—Estoppel—Orphans' court practice—Guardian ad litem.*

1. If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed though the fund totally fails; but where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with the payment, it is esteemed specific.

2. Where a testatrix directs her trustees "to set aside and hold" a sum stated "out of the stocks and bonds belonging to me at their market value at the time of my death," in trust for a granddaughter, the gift of the stocks and bonds is specific, and the trust must be set up out of her stocks and bonds at the market value at the time of her death, and not out of the proceeds thereof.

3. In such case, it is immaterial that the stocks and bonds belonging to testatrix at the time of her death may have increased greatly in value, and the shares of other legatees may be proportionately lessened by setting them aside, rather than other securities of the estate to the trust fund.

4. That the will authorizes the executors and trustees to sell securities and make reinvestments, does not authorize them to sell the stocks and bonds directed to be set aside for the trust.

5. Where a will expressly directs the executors to set up trusts out of nonlegal securities held by testator, the rule against trustees not investing in such securities is not applicable.

6. The fact that the cestui que trust accepted interest on the face value of the trusts as a temporary arrangement, does not estop her from asserting her right to have the stocks and bonds set up under the trust.

6. Where the rights of minor children may be possibly affected by litigation on the construction of a will by the orphans' court, guardians ad litem should be appointed for them.

Argued May 14, 1928. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeals, Nos. 3 and 4, Jan. T., 1929, by Florence Huldah Shepherd Shirk and Anne C. Shirk, from decree of O. C. Lackawanna Co., year 1918, No. 1147, dismissing petition to have trusts set up in will of Huldah C. Crawford, deceased. Reversed.

Petition to have trusts set up. Before SANDO, P. J. The opinion of the Supreme Court states the facts. Petition dismissed. Petitioners appealed.

Error assigned, inter alia, was decree, quoting record.

Harris C. Arnold, with him John A. Coyle, for appellants.—The trusts created are specific and appellants are entitled to have them set up out of securities as of the time of testatrix's death: Ferreck's Est., 241 Pa. 340; Wood's Est., 267 Pa. 462.

John P. Kelly, with him Roswell H. Patterson and Ralph W. Rymer, for appellees.—The legacy or trust created in favor of petitioners is demonstrative and not specific: Wilson's Est., 260 Pa. 407; Kenaday v. Sinnot, 179 U. S. 606; Hammer's Est., 158 Pa. 632; Hoppel's Est., 5 Phila. 216; Martin v. Martin, 29 Pa. Dist. R. 533; Welch's App., 28 Pa. 363; Hammer's Est., 158 Pa. 632; Walls v. Stewart, 16 Pa. 275.

The executors or trustees, having discretionary powers as to investments, were authorized to retain the stock in the estate: Detre's Est., 273 Pa. 341; Taylor's Est., 277 Pa. 518; Barker's Est., 159 Pa. 518.

OPINION BY MR. JUSTICE WALLING, June 30, 1928:

This petition was filed by legatees to compel executors and trustees to set up trusts in accordance with the terms of the will. Huldah A. Crawford, late of Lackawanna County, died December 6, 1918, leaving an estate of the approximate value of one and a half million dollars, the bulk of which was in stocks and bonds. Her last will is, inter alia, as follows: "First: I give and bequeath to my son, James G. Shepherd, the sum of Four Hundred Thousand ($400,000) Dollars and all moneys received from my life insurance.

"Second: I give and bequeath to my beloved granddaughter, Florence Huldah Shepherd Shirk, the sum of Fifty Thousand ($50,000) Dollars and all my diamonds and jewelry and so much of the silverware and household furnishings as she may desire.

"Third: The rest, residue and remainder of my property and estate of every kind, I give, devise and bequeath unto James G. Shepherd and Stanley C. Schooley as Trustees upon the following trust and conditions, viz.:

"Fourth: To take and hold said estate and invest and reinvest with the power to sell and transfer securities and convey real estate and in making investments the said Trustees jointly shall make such investments as they deem desirable and prudent regarding the safety of the investments rather than the high rate of interest.

"Fifth: I direct the Trustees to set aside and hold a fund of Two hundred and fifty thousand ($250,000) Dollars out of stocks and bonds belonging to me at their market value at the time of my death, in trust for my granddaughter, Florence Huldah Shepherd Shirk, and pay to her the income therefrom semi-annually to her sole and separate use, notwithstanding coverture, for

and during her life; and at her death to distribute the principal to her issue, if any then living and if none, then to her heirs under the intestate laws of Pennsylvania." Item six makes a like provision, except that the amount of the trust is $100,000, in favor of Anne Crawford Shirk, a great granddaughter. The will contains certain other bequests, not here important, and item fifteen provides, inter alia, "I direct the Trustees to pay in semi-annual payments unto my said son, James G. Shepherd and my granddaughter, Florence Huldah Shepherd Shirk, beginning six months after my death, the entire net income from the balance of my estate, one-half to each during his or her life; and to distribute on the death of my son, James G. Shepherd, or my granddaughter, Florence, respectively, one-half part of the remainder of the said trust estate to the issue of Florence Huldah Shepherd Shirk, if any then living and if none, then to my lawful heirs under the intestate laws of Pennsylvania." The will also formally appoints John G. Shepherd and Stanley C. Schooley executors and trustees. A codicil makes some additional bequests and provisions not here involved. The executors qualified duly and in 1919 filed a first partial account and another in 1925. To the latter, exceptions were filed which are still pending. The estate contained ample stocks and bonds, but the executors and trustees, although requested by the beneficiaries, failed to set up the trusts provided in items five and six of the will. Under a temporary arrangement the executors have paid Mrs. Shirk six per cent on the face value of her legacy. She has also been paid the income on her share of the residuary estate.

The stocks and bonds owned by testatrix at the time of her death consisted largely in stock of the Spring Brook Water Supply Company, which then had a market value of $105 per share. This has become exceedingly valuable, a stock dividend of fifty per cent having been declared thereon in 1920 and another of thirty-three and one-third per cent in 1926. In December of

the latter year the legatee, Mrs. Shirk, on behalf of herself and minor daughter, Anne Crawford Shirk, filed a petition in the orphans' court praying, inter alia, for an order on the executors and trustees to set up the trusts as provided in items five and six of the will in question out of securities therein specified. After an answer and replication were filed and testimony taken, the orphans' court dismissed the petition. This was based on the conclusion that the legacies in question were general and demonstrative, but not specific. Therefrom petitioner brought these appeals, one on her own behalf and one as next friend for her minor daughter, Anne Crawford Shirk.

The order cannot be sustained. True, courts are inclined to treat legacies as general (Kenaday v. Sinnot, 179 U. S. 606; Wilson's Est., 260 Pa. 407; Hammer's Est., 158 Pa. 632) and will do so even where a fund is specified as the source of payment: Welch's App., 28 Pa. 363. Where, however, testator designates the gift as "my property," for example, "my home," "my diamonds," "my watch," or "my stock," the legacy is specific : Blackstone v. Blackstone, 3 W. 335, 339; Ferrick's Est., 241 Pa. 340; Woerner's American Law of Administration, vol. 3, p. 1515; and see Wood's Est., 267 Pa. 462; Mizener's Est., 262 Pa. 62; Balliet's Est., 14 Pa. 451. The principle is well stated by Mr. Justice Bell in Walls v. Stewart, 16 Pa. 275, 281, that, "The distinction seems to be this : If a legacy be given with reference to a particular fund, only as pointing out a convenient mode of payment, it is considered demonstrative, and the legatee will not be disappointed though the fund totally fail. But where the gift is of the fund itself, in whole or in part, or so charged upon the object made subject to it as to show an intent to burden that object alone with the payment, it is esteemed specific." In the instant case the equivalent expression is used, the will saying, "out of stocks and bonds belonging to me at their market value at the time of my death." Hence, the trusts are

to be set up out of her stocks and bonds, not out of the proceeds thereof; and to make it perfectly clear, she adds, "at their market value at the time of my death." This language is too plain to require construction. The trusts were to be set up out of her stocks and bonds and the price thereof was the market value at a certain time, to-wit, her death. Nothing is said about a sale of securities and setting up the trusts out of the proceeds. Where stock is specifically given as such it will be so treated and not as money (Johnson's Est., 170 Pa. 179), and when the legacy and the fund are the same it is specific: Smith's App., 103 Pa. 559. That the testatrix used the word "fund" in reference to the trusts is not important. That word may signify cash or other species of property. See 27 C. J. 926. There is no reason here to hold that she intended the trusts should be set up in cash or out of securities purchased by the trustees. The words market value at her death could not apply to a sale of the securities by the executors, for then it would necessarily be the market value at time of the sale. To give these words any meaning they must be construed as referring to the price at which the securities were to be turned over in setting up the trusts. That they turned out of more worth than their market value at the death of testatrix, was the good fortune of the legatees, who are entitled to have the stocks and bonds at their value as fixed in the will, together with such share of the stock dividends and other accretions as belong to life tenants. As to which, see Nirdlinger's Est., 290 Pa. 457.

That the will authorizes the executors and trustees to sell the securities, make reinvestments, etc., does not empower them to sell the stocks and bonds necessary to set up the trusts here in question. Whether they can do so after the trusts have been set up we need not now decide. The sale of some securities was necessary to carry out other provisions of the will. As the testatrix provided these specific securities to form the trusts, it is of no importance that they are not what is known as legal

securities. The terms of the will protect the trustees. Where the will expressly directs the executors to set up trusts out of nonlegal securities held by the testator, the rule stated in Taylor's Est., 277 Pa. 518, against trustees investing in such securities, is not applicable. See Detre's Est., 273 Pa. 341. The estate has a large amount of securities in addition to those called for in items five and six.

The suggestion that by accepting the interest on the face value of the trusts Mrs. Shirk is estopped from asserting her rights under the will is untenable. That was understood as a temporary arrangement. The letter of the executors to Mrs. Shirk, of September 1, 1920, when the first checks were sent, says: "Enclosed please find check for $2,000. We expect to send you $2,000 monthly on the basis of 6 per cent on your Trust Fund of $250,000 until we can convert securities to separate it from the body of the estate and an estimated income from the residuary estate of $18,000, one-half of which is payable to you. Yours sincerely,

[Signed] Jas. G. Shepherd,
Stanley C. Schooley,
Executors."

And the answer of the trustees in this case states: "She [Mrs. Shirk] acquiesced in the temporary deferring of the setting up of the trusts, she receiving six per centum in monthly installments in the meantime." This temporary arrangement, made at the instance of the trustees, did not defeat the rights of the legatees under the will. It is suggested that because of the temporary arrangement, Mrs. Shirk has received more from her share of the income of the residuary estate than she would if the trusts had been set up promptly. If so, it was the voluntary act of the executors and is capable of adjustment.

The answer avers that the trustees have set up the $100,000 trust for Anne Crawford Shirk out of liberty bonds purchased since the death of the testatrix. This

is not such a trust as is provided for in the will and, she being a minor, no question of waiver can arise in her case.

It may seem unjust that the son, James G. Shepherd, is entitled to only the face value of his $400,000 legacy, while the legatees under the fifth and sixth items of the will receive that which is of far greater value than the sums specified therein. It is a sufficient answer to say the will so provides and it cannot be disregarded. The trustees represent all interests, including those in remainder, and we agree with the orphans' court that the minor children, who take in remainder, have no antagonistic interest in this proceeding to necessitate their being joined therein. But to avoid any possible question hereafter, we suggest that a guardian ad litem be appointed for the minor children and that he appear of record prior to the entry of final decree.

The testatrix left ample stocks and bonds, now in the executor's hands, to set up the trusts in question, and, while as trustees they were given broad discretionary powers in the control of the estate, the duty to set up the trusts is imperative. As no sufficient reason for their failure to do so appears, the prayer of petitioner should be granted.

The order appealed from is reversed and the petition is reinstated, with a procedendo, costs to be paid out of the estate.