## In re Safe Deposit Bank of Pottsville

*D. W. Koercher*, for accountant; *George Ellis*, for exceptants.

HICKS, P. J., July 24, 1933.—On March 9, 1906, by deed of trust, Mary C. Henderson, still living, granted, sold and delivered to Safe Deposit Bank of Pottsville, upon the uses and trusts therein set forth, certain named bonds and securities, representing 21 different investments, of which, the accountant admits, 14 were nonlegal for trust investments. In addition to the bonds and securities, she also delivered $6,273.66 in cash. The chief beneficiary of the trust was the settlor's daughter, Louise H. Henderson.

In the deed of trust, it was declared that the bonds and securities were to be held by the trustee "to pay the net revenue and income . . . to Louise H. Henderson, as long as she lives and in case of her death, leaving issue, then to hold said fund share and share alike in trust for said children and to pay the [same] to the guardian . . . until each child attains the age of twenty-one years, and the fund so held in trust for each child shall be paid to such child upon attaining the age of twenty-one years."

Louise H. Henderson intermarried with L. Reed Fuller and died on January 19, 1930, leaving the following children, to wit, Anna Pendleton Fuller, who became 21 years old on June 28, 1932, Roberta Henderson Fuller, Luman Reed

Fuller, and Gilpin Hewes Fuller, all of whom are minors and represented by Bernard Knollenberg, guardian.

On February 7, 1933, the first account of the trustee was filed and, on the following day, a petition for confirmation thereof and distribution in conformity therewith. Exceptions thereto were filed by Anna Pendleton Fuller and the guardian for the other three children.

Exception is taken to the investment by the trustee in admitted nonlegal securities, and the court is asked to surcharge the trustee with the purchase price of the same. The nonlegal investments are as follows:

| Date of Purchase | | Purchase or Inventory Price |
|---|---|---|
| March 26, 1906, | $4,000, Lehigh Valley R. R. Gen. Consol. 4's, 2003 | $4,000.00 |
| | $2,000, New Orleans Term. 1st Mtg., Ser. A, 4's, 1953 | 1,937.50 |
| Sept. 12, 1906, | $1,000, Lehigh Valley R. R. Gen. Consol. 4's, 2003 | 994.00 |
| Dec. 31, 1907, | $3,000, central of Georgia Rwy., Consol. 5's, 1945 | 2,925.00 |
| Sept. 10, 1931, | $2,000, Phila. & Reading Coal & Iron Co., Refund. 5's, 1973 | 2,000.00 |

The question for our decision is stated by the accountant and exceptants in the same identical language as follows: "Whether in making reinvestments, the [trustee] could reinvest in nonlegal securities of the same kind or similar to those forming part of the original principal of the trust fund."

At the very outset, it should be noted that no exception is taken to the retention by the trustee during all these years of the nonlegal investments delivered to it by the settlor or creator of the trust. We are dealing alone with investments made by the trustee. The contention of the accountant is that the intention of the maker of the instrument of trust "was not to limit the trustee to what is classed as 'legal' investments for trust purposes"; that the settlor "construed and fully understood, and intended to grant and confer upon the trustee full, plenary, and discretionary powers in the management of the trust estate, and in retaining, exchanging, or disposing of the bonds, stocks, securities, and chattels of the general type granted and conveyed to the trustee, without being limited to what is known as legal investments for trust funds in Pennsylvania", and hence was required, in the exercise of its discretion, to act only in good faith and with common prudence and skill. This contention requires an interpretation of the deed of trust.

The applicable portion of the trust deed is as follows: "The said [trustee] to have full power to sell the said bonds, stocks, securities and chattels, receive the proceeds thereof and invest and reinvest the same in trust as hereinbefore set forth." We do not think that this clothed the trustee with discretionary power as to investments and reinvestments.

The appropriate rule of law controlling the conclusion as to the correctness of the accountant's contention is "well expressed in Barker's Estate, 159 Pa. 518, 528-9, thus: 'This [the investment in nonlegal securities] may be authorized by the creator of the trust, but where such a provision is relied on, it is for the trustee to establish it with the utmost clearness, and, when shown, it will be strictly construed. . . . The power ought not to be sustained upon conjecture, nor inferred from . . . express grant of discretion as to matters not relating to the management of the [particular] fund [before the court]. The presumption is against the existence of such a power, and all doubts should be resolved

against the party asserting it' ": Taylor's Estate, 277 Pa. 518, 523, 524. Certainly, there is nothing in the deed of trust which, with utmost clearness, indicates an authority on the part of the trustee to invest or reinvest in nonlegal securities, when all doubts are resolved against the accountant.

The accountant urges that the use of the words, "bonds, stocks, securities and chattels" throughout the deed of trust plainly indicates that the intention of the creator of the trust "was not to limit the trustee to what are classed as 'legal' investments for trust purposes." The deed grants, sells, and delivers to the trustee "all and singular the bond, stocks, securities and chattels", enumerating 21 bonds, of which 14 are nonlegal investments, and cash. It then continues: "To have and to hold the said bonds, stocks, securities and chattels" in trust, "to assign, transfer and pay over all of said bonds, stocks, securities and chattels" to certain parties in the event of Louise H. Henderson dying without issue, and grants full power to the trustee to sell the said "bonds, stocks, securities and chattels, receive the proceeds thereof and invest and re-invest the same in trust as hereinbefore set forth." We cannot agree that the use of these words shows that the trustee was given discretionary power as to investments. No stocks were delivered, and the word "chattels" must be construed as including and referring to bonds, stocks, and securities. Bonds and securities have the same meaning as far as this instrument is concerned, and hence no special significance, except descriptive of what was granted, can be attached to the use of the words "bonds, stocks, securities and chattels".

At the hearing on the exceptions, accountant introduced an ex parte affidavit of the creator of the trust, made 27 years after the creation of the trust, 2 weeks after the account was filed, less than 2 weeks before the filing of the exceptions and more than 3 years after the death of Louise H. Henderson, for the purpose of showing that the creator intended to confer upon the trustee authority to make nonlegal investments. Aside from its incompetency because the creator is still living and should have been called to testify so as to submit to cross-examination, such testimony if produced would not have been receivable to vary or contradict the very plain import of the instrument. In the construction of a trust, the purpose and intention of the parties must control, this being determined from the terms of the instrument itself, if it be plain and unambiguous. Parol proof cannot be received to vary or contradict its stipulations or to show that some meaning was intended other than that which the words plainly import. And statements by the creator of a trust, after it has been executed and carried into effect, are inadmissible to vary or affect its terms, where made in the absence and without the knowledge or consent of the beneficiaries. Of course, where the instrument is indefinite or inconsistent, the court can look at the declarations of the donor and consider the surrounding circumstances in determining just what the intention of the donor was: 65 C. J. 501, § 249; Henry on Trial Evidence, secs. 353, 354. There is no ambiguity, indefiniteness, or inconsistency in this instrument as to the authority granted to the trustee in making investments or reinvestments, and therefore no extrinsic evidence as to intention and purpose of the creator of the trust is necessary or receivable. The meaning is plain. There being no express authority in the instrument, the trustee had no power to invest and reinvest trust funds in the bonds of private corporations, and, having done so, it was at its risk, even though acting in good faith and exercising sound discretion: Taylor's Estate, supra, p. 525.

The cases of Crawford's Estate, 293 Pa. 570, and Detre's Estate, 273 Pa. 341, cited by accountant, are inapplicable, as in each of them the trustee was expressly clothed with discretionary powers as to investments and reinvestments.

698

Since the trust deed conferred on the trustee no express authority to make nonlegal investments, following Taylor's Estate, supra, p. 524, we will have to surcharge the accountant with $11,856.50, the cost of the nonlegal securities, which the trustee can take over from the estate.

And now, July 24, 1933, the exceptions are sustained, the accountant is surcharged with the sum of $11,856.50, the cost of the investments excepted to, and the accountant is directed to prepare a schedule of distribution in accordance herewith within 30 days from this date, to be submitted to the court for approval in accordance herewith.

From M. M. Burke, Shenandoah, Pa.