## Horn's Estate.

Argued October 2, 1934. Before Frazer, C. J., Simpson, Kephart, Schaffer, Maxey and Linn, JJ.

*R. W. Knox,* with him *O. S. Chalfant,* for appellants.

*J. R. McCreight,* for Cora E. Mitchel, *Lloyd O. Hart,* for Elizabeth E. Mounts and *George T. Cummins,* for Bertha Coogle's Estate, appellees.

OPINION BY MR. JUSTICE LINN, November 26, 1934:

Decedent died May 18, 1932, leaving a will dated July 21, 1926, duly proved. At the date of the will, he owned 209 shares of Ohio Fuel Corporation, a corporation of the State of Delaware. The 7th paragraph of the will provides "I will and bequeath to A. W. Clemens. . . . Also my Ohio Fuel Corporation stock." The question is whether that legacy was adeemed.

The legacy was specific: Crawford's Est., 293 Pa. 570, 574, 143 A. 214. When he died, no Ohio Fuel Corporation stock was found; prima facie, the specific legacy had been adeemed. The legatee's executors contend that there has been no ademption and that they can trace the investment in Ohio Fuel Corporation stock into an investment left by testator in the shares of two other corporations. They have the burden of proof and, to succeed, must show that the shares of stock now claimed are the same, or substantially the same, as the shares of stock given. They attempt to sustain this burden by showing the following facts: In November, 1926, that is, after the date of the will, the property of Ohio Fuel Corporation and the property of Columbia Gas and Electric Company, a corporation of West Virginia, were united into a single corporation by means of the organization in Delaware of a third corporation, known as Columbia Gas & Electric Corporation, and the transfer to it of the assets of the other two. The record does not show clearly how the consolidation was accomplished. One of the papers in evidence shows that depositing stockholders, of whom decedent was one, authorized the committee to "cause to be transferred to the newly organized company, or its subsidiaries, assets of one or both of the two present companies, instead of their stock, or [the committee] may proceed

by way of merger or consolidation of the newly organized company with one or both of the present companies, or may utilize one of the present companies, in lieu of a newly organized company, as the company to acquire, directly or through subsidiaries, the stock or assets of other and to issue the new securities to the depositors."

In return for his 209 shares of Ohio Fuel Corporation, testator was entitled to receive 32.67715 shares of preferred and 73.15 shares of common stock of Columbia Gas & Electric Corporation. He paid $31.96 for the fraction of the preferred and received a certificate for 33 shares, at the same time taking a certificate for 73 shares of common and $13.05 for the fraction. In April, 1929, the new corporation issued 2½ shares in exchange for one of common stock, making testator's holding of common stock 182.5 shares. In 1930, a 25% stock dividend increased his holding to 228 shares. Later, a portion of the corporate property—said to consist of its oil and gasoline properties—was transferred to a fourth corporation, known as Columbia Oil and Gasoline Corporation, organized for the purpose, which issued to the third corporation its shares, common and preferred; the common stock was deposited under a voting trust agreement and certificates of interest were issued to the third corporation's shareholders, testator receiving such a certificate for 45 shares. During the same period, by exercising purchase rights, he obtained additional shares. The legatee's executors claim the 33 shares of preferred and the 228 shares of common stock of Columbia Gas and Electric Corporation, and the voting trust certificate for the 45 shares of Columbia Oil and Gasoline Corporation, but make no claim for the shares of stock purchased in the exercise of rights. They contend that the shares of both corporations so claimed by them are equivalent to what testator described as "my Ohio Fuel Corporation stock." The learned court below was of opinion that they were neither the same nor substantially the same property as that given, and held that

there was an ademption. The question now is: Does the thing given exist?—are the shares in the third and fourth corporations substantially the same thing as the Fuel Corporation stock, though in different forms and with different names?—or is the property claimed a different thing?

In Blackstone v. Blackstone, 3 Watts 335, it appeared that, after a will was made, bank stock, the subject of a bequest, was sold or exchanged for a bond of the purchasers, with the declared intention of keeping the bond for the legatees in place of the bank stock, but the legacy was held adeemed. GIBSON, C. J., stated the rule to be (at p. 337): "It is certainly now held for clear law that a legacy properly specific, and not merely specific in its nature by being charged on a specific fund, is adeemed, or, to speak more properly, extinguished, by any change of its state or form, effected, not by fraud or operation of law, but by the act of the testator, whatever be its purpose, which makes the corpus of the legacy, at his death, a different thing from what is indicated by the terms of the description."

In Slater v. Slater, [1907] 1 Ch. 665, COZENS-HARDY, M. R. put the matter as follows (at page 672): "I feel bound myself to adopt the view taken not in one case only, but in many, that you have to ask yourself, Where is the thing which is given? If you cannot find it at the testator's death, it is no use trying to trace it unless you can trace it in this sense, that you find something which has been changed in name and form only, but which is substantially the same thing." In that case the bequest was of "the interest arising from money invested [inter alia] in Lambeth Water Works Company." Between the dates of his will and his death, the Lambeth Water Works Company was acquired by Metropolitan Water Board, pursuant to an act of Parliament, under the provisions of which Metropolitan Water Board stock was issued to testator for the Lambeth Water Works Company investment. It was held that the transaction in substance was

a sale of the Lambeth Water Works Company to the Metropolitan Water Board, and that the Metropolitan stock received in compensation was not the same thing as the investment bequeathed.

In Hoke v. Herman, 21 Pa. 301, 305, BLACK, C. J., said: ". . . if a thing bequeathed in a will by such a description as to distinguish it from all other things be disposed of, so that it does not remain at the death of the testator, or if it be so changed that it cannot be called the same thing, the bequest is gone. If such legacy be of a debt, payment necessarily makes an end of it. The legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator." See also Harshaw v. Harshaw, 184 Pa. 401, 39 A. 89; Pruner's Est., 222 Pa. 179, 70 A. 1000; Gibson's Est., 57 Pa. Superior Ct. 283.

The learned auditing judge said: "The 209 shares held when the will was made have disappeared, and by reason of a merger of companies, of divers allotments, stock dividends, the exercise of 'rights' by additional purchases, etc., the testator had in its place 282 shares of common and 63 shares of preferred stock in the Columbia Gas & Electric Company, and 56 shares in the Columbia Oil and Gas Company. All of these are not claimed by the A. W. Clemens Estate but only such as trace a direct line of descent back to the original 209 shares of Ohio Fuel Corporation. The interest represented at his death was in a different number of shares, of different classes of new values, in two different companies. There was certainly a complete change in form."

Referring for a moment to the fact that appellants do not claim all of the shares found, it may be noted that, while the legacy of "my Ohio Fuel Corporation stock" is specific, the form of expression is generic and (the will speaking as of the date of death) would carry all the

stock of Ohio Fuel Corporation which testator possessed at his death (whether more or less than he possessed at the date of the will) : Fidelity Trust Co.'s App., 108 Pa. 492, 501, 1 A. 233. If, then, appellants could make good their contention that the shares left at death are the same thing as Ohio Fuel Corporation shares, they would be entitled to all of them. While they should not lose for claiming less than they were entitled to, if entitled at all, we refer to their construction of the lact as, perhaps, some evidence that the shares found at testator's death were not substantially the same thing as Ohio Fuel Corporation stock.

Appellants seek to meet the auditing judge's statement of the result of testator's participation in the change of his investment in one corporation for shares in two others, by suggesting that in the consolidation or merger of corporations no sale takes place. Though true in some instances and not in others (Buist's Est., 297 Pa. 537, 541), the suggestion is not decisive of the question before us. It appears that testator agreed in writing that the assets of Ohio Fuel Corporation should be transferred to another corporation; so far as he could, he assented to a sale, and the price he agreed to receive, was his proportion of the shares allotted to the corporate owner of the assets transferred. By this conduct he expressly authorized or participated in the extinction of the shares of stock, the subject of the legacy, as effectually as the testator in Blackstone v. Blackstone, supra, who sold or exchanged the bank stock bequeathed for the bond which he intended to be treated as a substitute for the specific legacy given.

The change produced in the testator's Ohio Fuel Corporation stock is wholly unlike that resulting from the conversion of a state bank into a national bank (Maynard v. Bank, 7 Phila. 6), or from the change in par value of shares (Fidelity Trust Co.'s App., supra) ; nor are appellants aided by Black's Est., 223 Pa. 382, 72 A. 631, or Wood's Est., 267 Pa. 462, 110 A. 90, where the legacies

were of "proceeds" of bonds and "shares of stock or interests" in the corporations referred to; or by Shupp v. Gaylord, 103 Pa. 319, dealing with a direction to pay out of rents received from a described source.

Decree affirmed, costs to be paid by appellant.