## Soles Estate.

Argued September 29, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Harvey A. Miller,* with him *Charles O. Parks,* and *Miller & Miller,* for appellants.

*Mord C. Taylor, Jr.,* with him *Ruby, Nescott and Taylor,* submitted a brief for appellees.

OPINION BY MR. JUSTICE POMEROY, May 4, 1973:

Marguerite D. Soles died testate on July 3, 1968, approximately one and a half months after the death of her husband Herbert A. Soles. Her will was probated on July 9, 1968 and a decree of distribution entered on May 18, 1972.[1] This appeal was taken by the Hawks, husband and wife, who are cousins of the decedent and are residuary legatees under the will.[2]

The dispute arises out of the following language of the will of Marguerite D. Soles:

"THIRD: Should my husband predecease me, then I direct that my estate, as above mentioned, be distributed as follows:

. . . .

"(b)  To MRS. NETTIE ANDERSON, of 947 Fawcett Avenue, McKeesport, Pennsylvania, I bequeath one hundred and thirty (130) shares of the stock of the

---

[1] An earlier decree of distribution in this matter was appealed to this Court, but all parties agreed to remand to the lower court to permit a more complete record to be established.

[2] The Hawks are also bequeathed under paragraph Third (a) of the will 108 shares of A T & T stock.

General Motors Corporation." At the time of her death, the testatrix owned only thirty shares of General Motors stock. Finding the terms of the bequest, as quoted above, to be unambiguous and therefore refusing to look beyond the language of the will to ascertain the donor's intent, the court below decreed not only the existing thirty shares to Mrs. Anderson, but also awarded her the present value of the missing one hundred shares. Exceptions to the decree by the Hawks were overruled, and this appeal followed.

The appellants contend that Mrs. Anderson is entitled to receive only those thirty shares of General Motors stock which the testatrix actually owned at the time of her death. The orphans' court division understood this contention to be based on a theory of mistake in the use of the figure "one hundred and thirty" instead of "thirty", since in fact neither Mrs. Soles nor her husband (from whom she inherited the stock) had ever owned more than thirty shares of General Motors stock. We, however, see the question presented both in this court and below as one of ademption. If the bequest to Mrs. Anderson was a *specific* bequest, then the testamentary gift of one hundred and thirty shares of General Motors stock has adeemed to the extent of the missing one hundred shares. *McFerren Estate,* 365 Pa. 490, 76 A. 2d 759 (1950); *Horn's Estate,* 317 Pa. 49, 175 A. 414 (1934); *Harshaw v. Harshaw,* 184 Pa. 401, 39 A. 89 (1898). If, however, the bequest is held to be a *general* one, then Mrs. Anderson is entitled both to the thirty shares owned by Mrs. Soles at the time of her death *and* the present value of the missing shares. *Hollenbaugh Estate,* 402 Pa. 256, 167 A. 2d 270 (1961). The issue, therefore, is whether this bequest is general or specific. We conclude that it is specific, and that the appellants must prevail.

We recognize at the outset the operation of several established principles of the law of wills in Pennsylvania. First, of course, is the rule that, unless constrained by law, the testatrix's intention governs. *Lander Estate*, 416 Pa. 605, 207 A. 2d 753 (1965); *Dinkey Estate*, 403 Pa. 179, 168 A. 2d 337 (1961); *Hope Estate*, 398 Pa. 470, 159 A. 2d 197 (1960). Mrs. Soles was at liberty to make either a specific or a general bequest, and hence we must determine the issue in the light of her intention as best we can.[3] Second, there is in our law a presumption which favors, in cases of doubt, the creation of general bequests and devises rather than specific bequests and devises. *Crawford's Estate*, 293 Pa. 570, 143 A. 214 (1928). The party who argues that a gift was a specific one must, therefore, carry the burden of proof. *Wilson's Estate*, 260 Pa. 407, 103 A. 880 (1918); *Ferreck's Estate*, 241 Pa. 340, 88 A. 505 (1913). And third, there is the rule, established by countless precedents, that for reasons of judicial and administrative convenience the testator's intention will be sought within "the four corners of his will" when the language of that document is sufficiently clear and unambiguous as to lead the court to believe that it can with reasonable certainty effect a distribution in accordance with the testator's desires. *McKinney Estate*, 435 Pa. 608, 258 A. 2d 632 (1969); *Battle Estate*, 379 Pa. 140, 108 A. 2d 688 (1954); *Newlin Estate*, 367 Pa. 527, 80 A. 2d 819 (1951). When the court charged with construction of a will

---

[3] The question of whether the testatrix intended a specific rather than a general bequest is not resolved by determining whether or not she wanted the gift to adeem should the property comprising the gift not appear in her estate at death. We merely attempt to determine whether the bequest was intended by the testatrix to refer to a specific, existing and identifiable article of her property. If so, then it is a specific bequest. See 6 Bowe-Parker, Page on Wills §48.1, at 4 (1962).

cannot feel confidence in distributing the estate by reference to that document alone, then it is proper and necessary to refer to sources beyond the instrument itself. *Gramm Estate,* 437 Pa. 381, 263 A. 2d 445 (1970); *Derham Estate,* 435 Pa. 590, 258 A. 2d 650 (1969); *Lyle Estate,* 374 Pa. 344, 97 A. 2d 830 (1953); *Shober Estate,* 364 Pa. 321, 72 A. 2d 113 (1950). With these principles in mind, we examine Mrs. Sole's will.

Mrs. Soles begins by directing that her debts and funeral expenses be fully paid. She then devises and bequeaths all of her estate to her husband, Herbert A. Soles. In paragraph THIRD, she indicates what disposition should be made in the event her husband is not alive to receive her entire estate. Twelve separate bequests are then set forth, eight of which involve gifts of corporate stock. A codicil dated October 17, 1966 adds a thirteenth bequest, also involving corporate stock. Mrs. Soles then leaves the residue to Mr. and Mrs. Robert Hawk, appellants here. It is on the thirteen separate bequests that we focus our attention.

Each disposition of corporate stock is in the following form: "To $X$ I bequeath $\#$ shares of the stock of the $Z$ company."[4]  Several items of tangible personal

---

[4] In tabular form, the bequests appear as follows:

| Stock | Recipient |
| --- | --- |
| 108 shares AT&T | Robert and Grace Hawk |
| 130 shares GM | Nettie Anderson |
| 100 shares USS | Harry and Leolia Winkelvoss |
| 10 shares Ford | Alice Tallman |
| 18 shares Beatrice Food Corporation | Marie Fox |
| 18 shares " | Madessa Underwood |
| 18 shares " | Harry Beard |
| 40 shares " | Benjamin and Millie Burton |
| 41 shares Peoples Union Bank | Mr. and Mrs. Frank Andrew |

property are also bequeathed to the stock-legatees and to others to whom no corporate stock was given. The language used to make a gift of personal property, other than stock, is uniformly in this style, e.g.: "To *X* I bequeath a large white China dog (Staffordshire)."

We have defined a specific bequest as "a gift by will of a specific article or part of the testator's estate, which is identified and distinguished from all other things of the same kind, and which may be satisfied only by delivery of the particular thing." *Beatty v. Hottenstein*, 380 Pa. 607, 610-11, 112 A. 2d 397 (1955), See also *Wood's Estate*, 267 Pa. 462, 110 A. 90 (1920); *Snyder's Estate*, 217 Pa. 71, 66 A. 157 (1907). Appellee would have us say that the gift of 130 shares of General Motors to Mrs. Anderson, one of nine separate bequests of corporate stock of six different corporations made by Mrs. Soles, can with reasonable certainty be said to be a general bequest as opposed to a specific bequest through examination of the language of the will alone. Appellee emphasizes the failure of the testatrix to use possessive words such as "my" stock, or "my" large white China dog (Staffordshire), and cites decisions in which we have found the presence of such terms meaningful. See, e.g., *Lenhart's Estate*, 344 Pa. 358, 25 A. 2d 725 (1942); *Horn's Estate*, 317 Pa. 49, 175 A. 414 (1934); *Crawford's Estate*, 293 Pa. 570, 143 A. 214 (1928); *Snyder's Estate*, 217 Pa. 71, 66 A. 157 (1907); *Klenke's Estate (No. 2)*, 210 Pa. 575, 60 A. 167 (1905); *Blackstone v. Blackstone*, 3 Watts 335 (1834). No two wills are alike, however, and we will not apply general principles of construction or rules from past decisions where to do so would appear to frustrate the testatrix's intent. *Cryder v. Garrison*, 387 Pa. 571, 128 A. 2d 761 (1957); *Joyce Estate*, 273 Pa. 404, 117 A. 90 (1922).

Here the gifts of stock in the six different corporations are in numbers which are, to say the least, not rounded. The testatrix has additionally used the indefinite article "a" and "an" to make gifts of items of personal property which, by their descriptions, are almost certaintly specific articles owned by her. Both these features of the will lead us to conclude that from examination of the will alone it is not possible to say with reasonable certainty that these were intended by the testatrix to operate as general bequests to be paid out of the estate without regard to the presence or absence in the estate of such an article. We find that this is a case, therefore, in which the court must "place itself in the armchair" of the testatrix and examine not only the document she designated as her will, but also the circumstances surrounding her at the time she did so. *Carter Estate*, 435 Pa. 492, 257 A. 2d 843 (1969); *Burleigh Estate*, 405 Pa. 373, 175 A. 2d 838 (1961); *Wanamaker Estate*, 399 Pa. 274, 159 A. 2d 201 (1960); *Jackson's Estate*, 337 Pa. 561, 12 A. 2d 338 (1940).

The appellants produced the scrivener of the will, who testified that in July, 1965 both Mr. and Mrs. Soles came to him and requested that he draw up reciprocal wills for both of them. At the time, Mr. Soles gave him a list of the property owned by him and his wife and the disposition they desired. According to the attorney, Mr. Soles informed him at that time that he owned, inter alia, 130 shares of General Motors Corp. and "ninety some shares" of the stock of Beatrice Food Corporation. Both husband and wife signed virtually identical wills on July 16, 1965.[5] When Herbert

---

[5] The wills were identical with the exception that the husband in paragraph Second gave his entire estate to his wife, were she living, while the wife in the corresponding paragraph gave her entire estate to her husband, should he be living. Both wills were amended by identical codicils dated October 17, 1966.

A. Soles died on May 20, 1968, his entire estate passed under his will to his wife.

The inventory filed by the executor of Mrs. Soles' estate reveals that at her death on July 3, 1968, Mrs. Soles owned the following stocks:[6]

108 shares of AT&T
30 shares of GM
100 shares of USS
10 shares of Ford
42 shares of Union Bank
240 shares of G. C. Murphy Co.

The inventory also reveals that in every instance in which Mrs. Soles made a bequest of tangible personal property using the indefinite article "a" or "an", the item described was found to exist in the estate. One cannot help but be struck by the similarity between the stock disposed of in the will and the stock owned by the estate of Mrs. Soles. Although the inventory is not conclusive of the stock ownership of husband and wife as of the date of execution of the reciprocal wills, the fact that the will of Mrs. Soles disposed of 108 shares of AT&T when she owned at her death 108 shares of AT&T, the fact that it disposed of 100 shares of USS when the estate owned 100 shares of USS, the fact that it disposed of 10 shares of Ford when the estate owned 10 shares of Ford, the fact that it disposed of 41 shares of Peoples Union Bank when the estate owned 42 shares of that stock, the fact that it disposed of 94 shares of Beatrice Food Corporation when, according to the testimony of the scrivener, Mr. Soles asserted that he owned "some ninety shares" of Beatrice Food Corporation, all lead us to conclude that in making these gifts,

---

[6] The above figures include the stock received by Mrs. Soles from the estate of her husband who predeceased her by a month and a half.

Mrs. Soles was making specific rather than general bequests.[7]

It follows, therefore, that to the extent that the estate does not possess 130 shares of General Motors stock, the bequest must be considered adeemed. We need not, and hence do not, reach the question whether the residuary takers, the Hawks, would be entitled to reformation of the instrument on the strength of the scrivener's testimony that Mr. Soles believed himself the owner of 130 shares of General Motors Stock, when, as it now appears, he was never the owner of more than thirty shares.[8] Cf. *Alexander's Estate*, 206 Pa. 47, 55 A. 797 (1903). The legatee of the General Motors stock, Mrs. Anderson, for reasons indicated above is entitled in any event to no more than the thirty shares owned by the estate of Mrs. Soles.

---

[7] We are aware that, absent more, the fact that a testator bequeathed stock in the exact quantity he owned at the time of execution of his will has not in the past been held to overcome the presumption that the gift was general rather than specific. See, e.g., *McFerren Estate*, 365 Pa. 490, 76 A. 2d 759 (1950) ; *Snyder's Estate*, 217 Pa. 71, 66 A. 157 (1907). By our decision here we do not intend to cast doubt on those precedents.

The presumption of a general bequest often serves to prevent the doctrine of ademption from creating an unequal distribution among persons the testator would normally be expected to regard with equal affection. *Shearer's Estate*, 346 Pa. 97, 29 A. 2d 535 (1943). Here, however, application of ademption does not serve to create an unnatural inequality, as all but one of the legatees were unrelated to the testatrix.

The presumption favoring general bequests can be overcome by evidence of the testator's intention to the contrary, *Wood's Estate*, 267 Pa. 462, 110 A. 90 (1920), and we merely say that here the evidence that the testatrix spoke of specific articles of her property is convincing.

[8] Appellants produced at the hearing letters from the Stock Transfer Officer of the General Motors Corporation to the effect that a search of that corporation's records revealed only that Herbert A. Soles had owned 30 shares of General Motors stock.

The decree of the lower court is reversed and the case is remanded for further proceedings consistent with this opinion. Costs on the estate.

Mr. Chief Justice JONES, Mr. Justice ROBERTS, Mr. Justice NIX, and Mr. Justice MANDERINO concur in the result.