## Kynett Estate

*Isaac H. Clothier, IV,* of *Dechert, Price & Rhoads,* for accountants.

*Philip A. Bregy,* of *MacCoy, Evans & Lewis,* for widow.

*George C. Denniston,* of *Snyder & Bent,* for remainderman.

*James W. Sutton,* Deputy Attorney General, for Commonwealth as parens patriae.

GUTOWICZ, *J.,* June 6, 1975—Harold H. Kynett died on September 20, 1973, leaving a will dated March 26, 1971, which was duly admitted to probate on October 10, 1973, when letters testamentary were granted to the executors named therein.

Proof of advertisement of the grant of letters to the executors was submitted.

Payments of transfer inheritance tax of $31,000 on December 19, 1973, and of $85.36 on June 17, 1974, were duly vouched.

By the terms of his will, testator gave his maritime collection to the Nantucket Atheneum,

Nantucket, Mass.; gave his art collection to the University of Aberdeen, Aberdeen, Scotland; gave his remaining personal effects and articles of household use to his wife, Doris Gray Kynett; gave $10,000 to Mary Hamilton McDonald; gave $60,-000 in trust for Emma Franks; gave $60,000 in trust for Alyce Sutherland; gave in marital trust for his wife, Doris Gray Kynett, such sum as will reduce the Federal estate tax to the lowest possible amount under the provisions of the Internal Revenue Code; and gave the residue of his estate to the Edna C. Kynett Memorial Foundation, Inc., a private charitable foundation.

Testator's wife, Doris Gray Kynett, survives. Upon application timely made, her right of election to take against the will was extended to October 10, 1976, by decree of Administrative Judge Klein dated August 13, 1974.

By item fourth of his will, testator provides:

". . . I give an amount exactly sufficient to reduce the Federal estate tax falling due because of my death to the lowest possible figure to my trustees in trust . . ." to pay to his wife, Doris Gray Kynett, for life, the entire net income and as much of the principal as the corporate trustee shall deem desirable for her support and welfare, and, in addition, gave her the unrestricted right ". . . to withdraw any part or all of the principal free of all trusts."

Upon the death of his wife, testator provides that any principal then remaining in the marital trust, after payment of death taxes and administration expenses caused by its inclusion in her estate, shall be distributed to the Kynett Foundation.

By item fifth of his will, testator gave the residue of his estate to the Kynett Foundation.

Since the gift of residue to the Kynett Foundation under item fifth qualifies for a full charitable de-

duction under section 2055 of the Internal Revenue Code of August 15, 1954, 68A Stat. 390, as amended, the Commonwealth, as parens patriae in charitable trusts, contends that "the amount exactly sufficient to reduce the federal estate tax . . . to the lowest possible figure . . ." as provided in item fourth is zero, and the Deputy Attorney General objects to any award to fund the marital trust.

At the time of his death, testator was 84 years of age. His wife, Doris, was 74. They had been married since 1966. His only child by a prior marriage predeceased in 1959. She was survived by three children, but they do not participate in the distribution. His gross probate estate is $2,879,451.77. His gross estate for Federal estate tax is $3,263,442.48. His adjusted gross estate, after debts and expenses, is $3,080,594 against which a full marital deduction is claimed in the amount of $1,540,297.38. Of the marital deduction claimed, $310,586 represents property jointly owned and specific bequests, leaving a balance of $1,229,710 for a fully-funded marital trust under item fourth of the will.

The question involved arises from the technical language of item fourth, in its relation to item fifth, employed by the scrivener to fund a marital trust for testator's wife. Since item fifth qualifies for a full charitable deduction, no Federal estate tax savings resulted by funding the marital trust under item fourth, and the Commonwealth, therefore, contends that testator intended to make no provision whatever for his wife. Having given the residue of his estate in item fifth to a qualified charity, it was not necessary for testator to measure the amount of the marital trust by the formula in order to obtain the benefit of the marital deduction in computing the Federal estate tax.

To sustain the Commonwealth's contention would require the court to disregard the elaborate provisions of item fourth creating the marital trust and to conclude that testator intended to make no provision whatever for his wife. This, we cannot do. Testator's intent must be gathered from a consideration of all the language contained in the four corners of his will, together with all the surrounding and attendant circumstances and the scheme of distribution, and not merely from isolated clauses or provisions thereof: Dinkey Estate, 403 Pa. 179, 168 A. 2d 337 (1961).

Only when the language of item fourth is carefully analyzed in its relation to item fifth are we confronted with the question whether testator intended to provide nothing whatever for his wife and give his entire estate to the charitable foundation, or to provide a marital trust for her to the limit of 50 percent of his adjusted gross estate even though the gift of residue to his foundation qualifies as an estate tax deduction.

Obviously, testator intended that the marital trust for the benefit of his wife would first be established before the gift of residue to the charitable foundation is determined. A gift of residue embraces only what is left after the gifts specified or designated in the will have been paid or satisfied: Wood's Estate, 209 Pa. 16, 57 Atl. 1103 (1904). It is contended that the formula measuring the amount of the marital trust in its relation to the gift of residue to the charitable foundation was an inadvertence. To show how this inadvertence occurred, the surviving spouse offered extrinsic evidence to show the circumstances surrounding testator when he executed the 1971 will. The Commonwealth objected that such evidence was inadmissible if the language of item fourth is clear and unequivocable.

While the language of item fourth standing alone may be clear, yet when considered as part of testator's testamentary plan to provide for his wife, it is utterly inconsistent if construed as an isolated provision. The will must be construed as a whole to ascertain testator's intention. To ascertain testator's true intent, the extrinsic evidence offered was clearly admissible. When the court charged with construction of a will cannot feel confidence in distributing the estate by reference to that document alone, then it is proper and necessary to refer to sources beyond the instrument itself: Soles Estate, 451 Pa. 568, 304 A. 2d 97 (1973).

It was shown by undisputed evidence that testator on January 19, 1966, the very day of his marriage, executed a will in which he disposed of the bulk of his estate through (i) a formula marital trust for his wife (giving her income and principal, if needed, during her life, and a general testamentary power of appointment), and (ii) a residuary trust which provided income to his wife for life, with remainder to the Edna G. Kynett Memorial Trust. The wording of the formula for the marital trust in the 1966 will was: ". . . I give an amount exactly sufficient to reduce the federal estate tax falling due because of my death to the lowest possible figure to my trustees, in trust . . ." Under the provisions of the 1966 will, the marital trust for testator's wife would have been funded in an amount equal to one-half of testator's adjusted gross estate, including other qualifying gifts.

Thereafter, section 2055 of the Internal Revenue Code of 1954 was amended by the Tax Reform Act of December 30, 1969, P. L. 91-172, 83 Stat. 560-61, by limiting charitable deductions for remainder interests to remainders of annuity trusts or unitrusts, i.e., trusts providing for annual payments to

the life beneficiary of a fixed percentage of principal. As a result, testator's 1966 will no longer qualified for the charitable deduction. When counsel called to testator's attention that the charitable deduction would be lost unless the 1966 will was changed, testator decided to leave the residue of his estate outright to his charitable foundation, since the marital trust would produce more than $50,000 a year of tax-free income, much more than would adequately provide for his wife's needs, and that an additional provision of a uni-trust was unnecessary. He did, however, give his wife an unrestricted power to withdraw principal from the marital trust in lieu of a general testamentary power of appointment.

In redrafting testator's 1971 will, the scrivener retained most of the provisions of the marital trust and repeated the exact language of the marital formula that had been used in the 1966 will, i.e., ". . . I give an amount exactly sufficient to reduce the Federal estate tax falling due because of my death to the lowest possible figure to my trustees, in trust . . ." Not until after testator's death was it discovered that the continuation of the marital formula in the 1971 will, in relation to the nontaxable absolute gift of residue to the charitable foundation, created a question of how much testator intended should be applied to fund the marital trust.

In construing the language of item fourth, we must consider and give appropriate effect to the circumstances in which testator used the words in his 1971 will to measure the amount of the marital trust, and which, we must assume, he had in mind at the time. To assume that he had in mind the figure zero would attribute to testator an intention to perpetrate a deception upon his wife, a finding which nothing in the record warrants. In the light

of the facts and circumstances surrounding the execution of the 1971 will, and the language of items fourth and fifth of the will, I conclude that testator intended to give in marital trust one half of his adjusted gross estate, less credit for property jointly owned and specific bequests to her, calculated as if his residuary gift to the charitable foundation were not exempt from Federal estate tax and to give the balance to the Edna G. Kynett Foundation, Inc. for its uses and purposes. I so decide.

The account shows a balance of principal of $2,844,337.99 and a balance of income of $61,938.29, which, subject to all distributions heretofore properly made on account of distribution, is awarded, as requested, to the Girard Trust Bank, Doris Gray Kynett and F. W. Elliott Farr, Executors of the will of Harold H. Kynett for further administration in accordance with the terms of the will and of this adjudication.

The above awards to be subject to all payments heretofore properly made on account of distribution, and payments of $909,478 on account to the trustees of the marital trust are hereby approved.

Payment and distribution is so decreed, and leave is hereby granted to the accountants to make all necessary transfers and assignments.

The certificate of the official examiner of his examination of awards in further trust shall be submitted and, when approved, shall be annexed.

Accountants will file a schedule of distribution within 90 days of absolute confirmation of this account, certified by counsel to be correct and in conformity with this adjudication, which, when approved, will be annexed.

And now, June 6, 1975, the account is confirmed nisi.