431 A.2d 1008

In re ESTATE OF J. A. FOX, Deceased.

**Appeal of GALLATIN NATIONAL BANK.**

Supreme Court of Pennsylvania.

Submitted March 3, 1981.
Decided July 10, 1981.

Mark Vita, Patrono, Ceisler, Edwards & Pettit, Washington, for appellant.

Ralph Christenson, Greenlee, Richman, Derrico & Posa, Washington, for Lucy McCoy.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY, KAUFFMAN and WILKINSON, JJ.

## OPINION

NIX, Justice.

■ This is an appeal from a final decree of the Orphans' Court Division of the Court of Common Pleas of Washington County denying exceptions to a decree nisi. The sole issue presented is whether a specific devise of real estate, which was sold during the period of a testator's incompetency,[1] includes the interest income which accrued on the proceeds of the sale from the date of sale to the date of testator's death. Unlike the Orphans' Court, we conclude that the interest income is not included.

On April 10, 1971, J. A. Fox (testator) executed a will devising certain real property, known as 3 Baltimore Avenue, to appellee, Lucy McCoy. Along with the property, Mr. Fox left appellee all of the household goods and furnishings therein as well as all insurance policies insuring the property or the proceeds from such policies.[2] Additionally, the will also provided that the residue of testator's estate was to be held in trust by appellant, Gallatin National Bank (Bank), for testator's wife, son and two granddaughters. The trust was to remain in existence during the lives of the wife and son, but was to terminate upon the death of the survivor of the wife or son.

1. The proceeds of the sale were used to purchase Gallatin National Bank Savings Certificates at a 6.5% per annum rate of interest.

2. FOURTH: I devise the premises known as 3 Baltimore Avenue, Washington, Pennsylvania, together with the household goods and furnishings therein and all insurance policies insuring such property, or the proceeds of such policies, to LUCY McCOY.

The gift to appellee of the real property, known as 3 Baltimore Avenue, was clearly a specific devise. A specific bequest or devise is a gift by will of a specific article or other property, real or personal, which is identified and distinguished from all other things of the same kind, and may be satisfied only by delivery of the particular thing. *Estate of Taylor*, 480 Pa. 488, 494 n. 4, 391 A.2d 991, 994 n. 4 (1978); *Soles' Estate*, 451 Pa. 568, 304 A.2d 97 (1973); *Beatty v. Hottenstein*, 380 Pa. 607, 112 A.2d 397 (1955); *Wood's Estate*, 267 Pa. 462, 110 A. 90 (1920); *Snyder's Estate*, 217 Pa. 71, 66 A. 157 (1907). The general rule is that a specific devise will be adeemed if at testator's death the testator no longer possessed an interest in the property devised and no contrary intention is set forth in the will. *Estate of Taylor, supra; Nakoneczny Estate*, 456 Pa. 320, 319 A.2d 893 (1974).

It has long since been decided in this jurisdiction that a specific legacy or devise is extinguished if the property is not in existence or does not belong to the testator at the time of his death. *Soles' Estate*, 451 Pa. 568, 304 A.2d 97 (1973); *McFerren Estate*, 365 Pa. 490, 76 A.2d 759 (1950); *Horn's Estate*, 317 Pa. 49, 175 A. 414 (1934); *Harshaw v. Harshaw*, 184 Pa. 401, 39 A. 89 (1898); *Hoke v. Herman*, 21 Pa. 301 (1853); *Blackstone v. Blackstone*, 3 Watts 335 (1834). Testator's intent is not relevant where the property devised or bequeathed in his will is not part of his estate at death. Where the legacy has been determined to be specific '[t]he legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator.' *Horn's Estate*, supra, 317 Pa. at 53, 175 A. 414; *Hoke v. Herman*, supra, 21 Pa. at 305. See also, *Harshaw v. Harshaw*, supra; *Pruner's Estate*, 222 Pa. 179, 70 A. 1000 (1908). This rule is equally applicable where the specifically devised or bequeathed property is removed from testator during his lifetime by an involuntary act or by operation of law. *Harshaw v. Harshaw*, supra; *Pleasants'*

*Appeal*, 77 Pa. 356 (1875). Thus, where it is established that the bequest or devise was specific and the nonexistence of the item in the testator's estate at the time of death, an ademption results." 456 Pa. at 323, 319 A.2d at 895–96 (footnote omitted).

*See also Estate of Taylor*, 480 Pa. 488, 391 A.2d 991 (1978); *Cooper's Estate*, 4 Pa. 88 (1846).

*Nakoneczny Estate*, 456 Pa. at 323, 319 A.2d at 895–96 (footnote omitted).

Our legislature recognized that such a rule of ademption was particularly harsh where the alienation of the property was at the direction of the guardian of an incompetent testator. In such cases a specific legatee or devisee was subject to the possibility of favoritism which guardians might be inclined to exercise among the named beneficiaries of the incompetent. Thus section 2514(16.1) of Decedents, Estates and Fiduciaries, 20 Pa. C.S.A. § 2514(16.1) provides:

Rules of interpretation

In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:

\*       \*       \*       \*       \*       \*

(16.1) Nonademption; incompetency.—If property of an incompetent specifically devised or bequeathed is sold or exchanged or if a condemnation award or insurance proceeds are paid to the estate of an incompetent as a result of condemnation, fire or casualty, the specific legatee or devisee has the right to the net sale price, the property received in exchange, the condemnation award or the insurance proceeds. This paragraph does not apply if subsequent to the sale, exchange, condemnation, or casualty, the testator has been adjudicated competent and survives the adjudication by one year.

■ To reach the result of the Chancellor we would be required to give the words "net sale price" some meaning other than the one the words themselves clearly convey. It is fundamental that where the words of a statute are clear

and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S.A. § 1921(b) (Supp.1980–81). *See also In re Lawrence Twp. School Dist. 1947 Taxes*, 362 Pa. 377, 67 A.2d 372 (1949).

Moreover, there is no basis for concluding that the spirit of the legislation intended anything more than what the plain meaning of the words used convey. If the property had not been conveyed prior to the death of the testator, it is clear that the specific devisee would not have been entitled to any income the property may have generated during the lifetime of the testator. This flows from the obvious fact that a specific devisee has no interest in specifically devised property until the testator's death. *Beatty v. Hottenstein, supra.*

Section 2514(16.1) was concerned with avoiding the harshness of the traditional rule of ademption in cases of estates of incompetents, not with enhancing the interest passed under a specific devise or bequest. Restated, section 2514(16.1) was not enacted to create a special proprietary interest in the income generated by the asset prior to the incompetent testator's death. Rather, it was to avoid the extinction of the interest altogether where a guardian sells or exchanges the asset during the testator's lifetime.

Supportive of the view that the legislature did not intend by section 2514(16.1) to create a proprietary interest in the income generated by the asset for the beneficiary prior to the testator's death is section 3543(b). Section 3543(b) provides that "[a] specific legatee or devisee shall be entitled to the net income from property given to him *accrued from the date of the death of the decedent.*" (Emphasis added).

In the event that the proceeds of the sale of the specifically devised real property had been required to be used for the care and maintenance of the incompetent during his lifetime, the law is clear the proceeds would have been available for that purpose and the devise deemed adeemed to the extent that the fund was consumed for that

590

purpose.  20 Pa. C.S.A. § 2514(18).  *Lloyd v. Hart,* 2 Pa. 473 (1846).  This again emphasizes that the specific devisee acquires no proprietary interest in the asset or the income generated by it prior to testator's death.  The devisee is entitled to the asset and to the benefits arising from the property only after the testator's death.  20 Pa. C.S.A. § 3543(b); *see also Beatty v. Hottenstein, supra.*

Appellee offers the rationale of *Lloyd v. Hart, supra,* in support of the decision of the Chancellor.  It is argued that the interest retains the "impress of real estate."  *Lloyd v. Hart, supra* at 479.  An analysis of the decision in *Lloyd v. Hart* is in full accord with the view we adopt and is not supportive of the position urged by appellee.  The holding in *Lloyd v. Hart* was that the sale of real estate by the committee of a lunatic, for payment of his debts under a decree of the court, works no conversion of the funds, and the fund is distributed according to the rules of descent for real property.  In that case the land was sold for Six Thousand ($6,000) Dollars and after payment of debts of the incompetent a balance remained in the fund of Three Thousand ($3,000) Dollars.

It is to be noted that the fund at issue in *Lloyd v. Hart* was the balance that remained of the proceeds from the sale.  There was no question of income generated by that fund.  There the Court used the device of holding that these monies "retained the impress of real estate" to avoid a change in the distribution to heirs because of the conversion.  So too, section 2514(16.1) and (18) protects the specific devisee from having her interest extinguished from the conversion of the property which was the subject of the specific bequest or devise.  In neither case is there any suggestion that income generated during the incompetent testator's lifetime should inure to the benefit of the devisee of the specific devise.

The question we are presently considering was raised and we believe correctly answered by the Orphans' Court Division of Montgomery County in *Ruck Estate,* 58 D.&.C.2d 768 (1972).  *Ruck Estate* concerned the distribution of the proceeds from the sale of, and interest generated on, certain

United States Savings Bonds issued to decedent, George Ruck, prior to his incompetency. The bonds were issued and registered to decedent and were designated p.o.d. to Herman Belz and Martha Belz. Decedent did not redeem these bonds at maturity. The bonds were found, redeemed and invested in a segregated bank account by the decedent's guardians shortly after their appointment. After decedent's death, Herman and Martha Belz claimed the proceeds of these bonds on the basis of their p.o.d. designation. In addition a claim was made for the accrued interest income earned prior to decedent's death by the investment of these proceeds.

The court held that the redemption of the bonds by the guardians did not work an ademption of the p.o.d. beneficiaries' right to the proceeds of the bonds. However, the court did reject the second claim for the interest generated by these proceeds prior to decedent's death. The court stated:

> It is evident, however, that Mr. and Miss Belz are not entitled to the income earned prior to decedent's death by the investment of the proceeds. *Their rights did not arise until the decedent died, and the estate is, therefore, entitled to all income earned or accrued by the segregated fund prior to that time.* The original proceeds of the bonds plus income earned after decedent's death, less the portions thereof due the spouse under her election, constitute the interest of Mr. and Miss Belz in the fund." *Ruck Estate, supra,* p. 785 (emphasis added).

Appellee suggests the possibility that the property in question may have materially appreciated in value. Implicitly she suggests that possibility would justify her receipt of any income from the certificate during the lifetime of the testator. This position is obviously fallacious. Absent the provisions of section 2514(16.1), Ms. McCoy's interest would have been completely extinguished as a result of the ademption. That result was altered only because of the legislative enactment in section 2514(16.1). The legislature saw fit to preserve for her only the net proceeds. Thus, what may or

may not have occurred to the real estate after its alienation is irrelevant. If it were contended that the trustees had improperly alienated the property with the purpose of diminishing the interest of the specific devisee, then a different question would be presented. Here there was no challenge to the propriety of the conversion of the real estate.

Decree reversed and matter remanded for further proceedings consistent herewith.

ROBERTS, J., concurred in the result.