BOZZA, J.,
This action is one of three related cases pending before the court which involve the application of the property tax exemption under the Local Economic Revitalization Tax Assistance Act as implemented by the City and County of Erie and the School District of the City of Erie to the property known as “100 State Street.”
On December 4, 1989, one of the owners of the subject property, MacDonald, Illig, Jones and Brit-ton, filed an assessment appeal challenging defendant’s determination of the year when the period of LERTA exemption is to begin with regard to the “shell/common area” portion of the building. On January 29, 1990, defendant board mailed an “appeal decision” to plaintiff indicating “no *412 change/’ thereby denying plaintiffs’ appeal. This appeal was initiated on February 22, 1990, and following a status conference, the parties filed a joint stipulation of facts. The parties then filed cross-motions for summary judgment which are presently before this court for resolution.
Plaintiffs/appellants are the owners of Condominium Units 600 and 700 (sixth and seventh floors) within a seven-story office building known as “100 State Street.” By application dated June 6, 1988, real estate tax abatement was sought for the subject property under the Local Economic Revitalization Tax Assistance Act, 72 Pa.C.S. §4722 et seq., as implemented by the respective local taxing bodies. On June 7, 1988, a building permit was issued and construction was commenced the next day. By letter dated September 16, 1988, the Board of Assessment Appeals “tentatively approved” the subject property for property tax abatement under the LERTA program. In November 1988, while under construction, the partially completed building was assessed for purposes of real estate taxation at a value of $200,000. (Plaintiffs’ condominium units were not separately assessed in 1988). The real estate tax based on this assessment was due the following year (1989).
On March 3, 1989, real estate tax exemption was sought for the condominium units (phase I) under the LERTA program and a building permit was issued for the initial phase of their construction which began on March 4, 1989. On April 5, 1989, MacDonald, Illig sought LERTA tax exemption for phase II of the development. A building permit was issued for phase II on April 5, 1989. The Board of Assessment Appeals “tentatively approved” the condominium units for property tax abatement under the LERTA program on April 27, 1989.
*413 The 100 State Street building (shell and common areas) was completed on April 25, 1989, and occupancy permits from the City of Erie and Commonwealth of Pennsylvania were issued. Occupancy permits were issued for the condominium units when they were completed on June 14, 1989. The subject property was declared a condominium by declaration executed June 27, 1989, and plaintiff, MacDonald, Illig, Jones and Britton, purchased the condominium units on the same day.
The 100 State Street building was again assessed for purposes of real estate taxation in 1989. The assessment reflected a total value for the completed building of $2,680,970 and tax calculated on that amount would have to be paid in 1990. On November 1, 1989, the Board of Assessment Appeals mailed property assessment change notices to MacDonald, Illig indicating that the condominium units had been assessed for property tax purposes. The assessment for Unit 700 was subsequently revised on November 22, 1989. Included with the assessment change notices were copies of memoranda apparently sent by the board to Carl Cannavino, Treasurer of the City of Erie. These memoranda indicated the board’s calculation of the amount and length of the period of exemption of plaintiff’s property under the LERTA program. The assessment for each condominium unit was divided between “interior” and “shell/common area” and a LERTA exemption period designated for each. The “shell/common area” portion was determined to be eligible for a LERTA exemption for the years 1989 through 1993. The LERTA exemption period on the “interior” portion of the condominium was established for the years 1990 through 1994.
It is MacDonald, Illig’s position that the exemption for the “shell/common area” should begin in *414 the year 1990. Its position is based on the conclusion that LERTA requires that exemptions begin in the year following completion of the improvement. The Board of Assessment maintains that the exemption period begins in the year following the issuing of a building permit, which in this case would be 1989. If MacDonald, Illig prevails, it will be exempt from tax on its pro rata share of the “shell/common area” tax for the year 1990. The assessment for its share for that year is $470,830. If the Board of Assessment is correct, the exemption in the first year would be equal to the tax owed on its share of the $200,000 assessment determined in 1988 and payable in 1989, a substantially lesser amount.
This court begins its analysis cognizant that the issues before it have not previously been resolved nor addressed by the Pennsylvania appellate courts. The general rules of statutory construction and interpretation apply and contrary to positions of both parties, a particular result is neither clear nor obvious. While substantially similar, the county’s LERTA ordinance differs in at least one material aspect from the city’s ordinance and the school district’s resolution. It provides that “the exemption shall commence in the tax year immediately following the year in which the building permit was issued.” Erie County, Pa., County Council Ordinance 16, §4(b) (April 17, 1985). Neither the city nor the school district has adopted the county’s approach, but rather have incorporated the language of the LERTA statute in a section designated “procedure for obtaining exemption.” School District of the City of Erie, Resolution, §5(2) (October 19, 1982); Erie, Pa., City Council Ordinance 80, §381.05.(b) (October 21, 1981). In spite of this distinction, the Board of Assessment has apparently applied the county’s standard for determining the *415 commencement of the exemption period for the exemptions under all three laws. While the overriding issue for this court to decide is whether the county’s provision is acceptable within the framework of LERTA, it is apparent that the city and school district approaches are inconsistent with the county’s approach and therefore cannot be administered according to the county standard. City and school district LERTA exemptions begin, according to the terms of their enactments, in the year following completion of the improvements.
While the legislature has made the adoption of a real estate tax exemption for the development of deteriorated property optional, it has mandated that once adopted, it be implemented consistent with certain requirements. Section 4725 of the enabling legislation provides that exemptions from real estate taxation shall be carried out “in the amounts and in accordance with the provisions and limitations hereinafter set forth. . 72 Pa.C.S. §4725. While a number of options are available to local taxing authorities, including the option of exempting taxes up to 10 years, the legislature did not include in LERTA a provision authorizing each local authority to adopt its own criteria for determining the commencement of the exemption. Although the LERTA statute does not contain a separate subsection entitled, “commencement of period of exemption” or something similar, it contains language indicating when a LERTA assessment will be conducted and the amount of the tax exemption calculated. Section 4727 explicitly states:
“Assessment agencies shall, after completion of the improvement, assess separately the improvement and calculate the amounts of the assessment eligible for tax exemption in accordance with the limits established by the local taxing authorities and *416 notify the taxpayer and the local taxing authorities of the reassessment and the amounts of the assessment eligible for exemption.” (emphasis supplied)
Both the city and the school district have incorporated this precise language in their respective authorizations. The county has chosen to disregard this legislatively prescribed procedure as well as the rest of the provisions of section 4727. See section 5, county ordinance. It is apparent that if the legislature had intended for the requirements of section 4727 to be optional, it would have said so or chose not to use language indicating mandatory compliance (i.e., “shall, after completion of the improvement. . .”). Defendant has argued that this section merely deals with “procedures” and does not include substantive rules to be followed by local taxing authorities. Further, defendant maintains that this language, as incorporated in the city and school district enactment, is “at best ambiguous and at worst convoluted” as to when an exemption is to commence. Although the operative language is included in the section entitled “procedure for obtaining exemption,” its character and application are not determined by its caption. While one could quite reasonably argue that the drafters of legislation could be more effective if they chose to limit the nature of the material within a particular section, unfortunately there is no requirement of law that statutes be well-written or organized. There is, however, a requirement that statutes be interpreted in a rational manner and that unreasonable results be avoided.
Upon close review of LERTA, the meaning and application of the relevant portions become evident. The legislature has decided that if a local taxing authority chooses to enact a program for local tax abatement consistent with that authorized by *417 LERTA, it may do certain things and must do others. Among the things that must be done are the following:
(1) The exemption must be limited to the additional assessment valuation attributable to the actual cost of improvements. 72 P.S. §4726(b)(3).
(2) The assessment agency shall, after the completion of the improvement, assess separately the improvement and calculate the amounts of the assessment eligible for tax exemption. 72 P.S. §4727(a).
While the parties have argued strenuously over the meaning of the word “shall,” an elementary notion of statutory construction dictates that when words in the statute are clear and free from all ambiguity the “letter of it is not to be disregarded under the pretext of pursuing its spirit.” 1 Pa.C.S. §1921; In re Fox’s Estate, 494 Pa. 584, 431 A.2d 1008 (1981). This court finds nothing ambiguous about the use of the word “shall” in the context of section 4727 or section 4726, nor does this court find any confusion over the admonition that the assessment shall be done “after the completion of the improvement.” The plain meaning of such words is that the assessment will occur after the improvement is finished. No other option is provided or implied.
Unfortunately, the legislature did not explicitly state that an exemption period shall begin after the completion of improvements. However, by adopting the mandatory provisions of section 4726 and section 4727 it strongly implies it and when the principles of statutory construction are otherwise applied, no other conclusion can be properly reached. Indeed, a general review of the legislature’s intent, a compelling consideration when construing a statute, leads inextricably to that result. See Tyler v. King, 344 Pa. Super. 78, 496 A.2d 16 (1985). The obvious *418 purpose of LERTA is to provide meaningful incentives to encourage the development of deteriorated property in such a way that the property acquires increased value and inter alia becomes a more significant source of tax revenue. Within the context of this objective, the legislature will be presumed to have intended the reasonable consequences of the act’s provisions and concomitantly to not have intended absurd or unreasonable results. Lehigh Valley Co-Operative Farmers v. Bureau of Employment Security, 498 Pa. 521, 447 A.2d 948 (1982).
By adopting a LERTA program, a local taxing authority is confronted with a legislative mandate to assess an improvement after it has been completed and to determine the amount of the applicable exemption. A reasonable conclusion is that the legislature intended that exemptions begin after an improvement is finished. This approach maximizes the incentives provided for the development of deteriorated property and is consistent with the fundamental purpose of LERTA. Moreover, ascertaining when “completion” has occurred is not difficult and is subject to reasonably precise determination either by legislative prescription or administrative guidelines.
One of the more obvious consequences of the county’s approach is the likelihood in an indeterminable number of cases of no real or significant advantage of a LERTA exemption in the first year of the program. If, for example, a developer obtained a building permit late in the year or was otherwise unable to make significant progress by the time new assessments are ordinarily made for the following year’s tax, the exemption for the next year would be either non-existent or for a less meaningful amount. This situation can quite easily arise in the construction business where delays for a multitude of rea *419 sons are common. Additionally, it may well be that the nature of the project undertaken requires an extraordinary period of site preparation or other preliminary activity which may be costly but, in relationship to the total cost of the project, represents a relatively minor expenditure. (To some extent, that is the situation posed by the present facts.) Regardless of the circumstances, where the period for the exempted tax begins in the year following the obtaining of the building permit, one who anticipates five full years of tax abatement may at the end of the project discover that for at least the first year the exemption benefit is not, in relative terms, very meaningful. This is a result inconsistent with the underlying rationale of Article VIII, section 2(b) (iii) of the Constitutioh of Pennsylvania upon which LERTA is based and the purpose of LERTA to encourage the development of deteriorated areas. As such it is unreasonable and was not intended nor contemplated by the legislature.
In addition, it is important to recognize the deleterious effect of inconsistent commencement dates among taxing authorities with overlapping jurisdictions. Under the scheme in question, the county may be and in the present case is providing substantially less incentive for the development of City of Erie property, thus negatively affecting the city’s efforts to pursue its specific LERTA objectives. Indeed, the legislature has indicated a contrary intention by including the provisions of 4725(b) which encourage joint action and agreement in the administration of LERTA exemptions.
This is not to suggest that the county is not free to exercise its discretion in choosing among the “options” expressly provided in LERTA. If the county is interested in diminishing the period of exemptions it can do so by simply choosing a lesser *420 period and stating it in its ordinance. Under the present approach, the stated period of five years is not an accurate representation of what a taxpayer may really be obtaining. If a person is told by the legislature that the assessment will be made after the improvements are completed it is a reasonable assumption that the exemption would be for the total cost of the improvements in each year the exemption is available. A diminished exemption in the first year is a consequence not consistent with either the spirit of LERTA or the creation of confidence in local government.
Defendants have relied on Northwood Nursing Care and Convalescent Home Inc. v. City of Philadelphia, 98 Pa. Commw. 401, 511 A.2d 281 (1986), to support the belief that the county is free to determine whether a LERTA'exemption program will be adopted and “how it is to be obtained.” (Plaintiff’s brief at 3.) In Northwood, a plaintiff who did not comply with Philadelphia’s requirement that a person apply for a LERTA exemption within 60 days of obtaining a building permit argued that Philadelphia had no right to impose the 60-day deadline. The Commonwealth Court disagreed, noting that it was within the city’s discretion to determine “how” the exemption should be obtained. The court’s decision obviously reflects the need for local discretion to respond to the exigencies of a communities’ practical circumstances. Philadelphia’s requirement that a person notify a local taxing authority of the intention to seek an exemption within 60 days of a building permit being secured in no way impedes the substantive rights of a taxpayer pursuant to LERTA. It is a procedural limitation necessary to administer LERTA programs in the context of Philadelphia’s approach to obtaining building permits. The circumstances presented by the county’s provision has *421 nothing to do with “how” an exemption is obtained nor does it reflect a concern for the idiosyncrasies of the operation of county government; it simply serves to lessen the amount of a LERTA exemption.
For all of the reasons stated above, MacDonald, Illig’s motion for summary judgment is granted and the Erie County Board of Assessment Appeals motion for summary judgment is denied. An appropriate order will follow.
ORDER
And now, December 4, 1990, upon consideration of the cross-motions for summary judgment filed by plaintiff, MacDonald, Illig, Jones and Britton, and defendant, Erie County Board of Assessment Appeals, it is hereby ordered, adjudged and decreed that plaintiffs’ motion for summary judgment is granted and defendant’s motion for summary judgment is denied.