J-A33029-15

2016 PA Super 104

| | |
|---|---|
| IN RE: ESTATE OF ADELE M. RICH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: FRANCIS J. RICH, JR. | No. 1009 EDA 2015 |

Appeal from the Decree entered  March 18, 2015
In the Court of Common Pleas of Delaware County
Orphans' Court at No: 063-2008

| | |
|---|---|
| IN RE: ESTATE OF ADELE M. RICH | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: FRANCIS J. RICH, JR. | No. 2034 EDA 2015 |

Appeal from the Decree entered  June 15, 2015
In the Court of Common Pleas of Delaware County
Orphans' Court at No: 063-2008

BEFORE:  FORD ELLIOTT, P.J.E., STABILE, and STRASSBURGER,[*] JJ.

OPINION BY STABILE, J.:                    **FILED MAY 20, 2016**

---

[*] Retired Senior Judge assigned to the Superior Court.

J-A33029-15

Appellant, Francis J. Rich, Jr. ("Francis" or "Appellant"), appeals from the amended decree entered on March 18, 2015 in the Orphans' Court Division of the Delaware County Court of Common Pleas. The decree granted the petition filed by Appellant's brother, Alfred R. Rich ("Alfred"), finding that real estate specifically devised in the Last Will and Testament of their mother, Adele M. Rich ("Decedent"), was not adeemed by virtue of its sale by Decedent's guardian in 2009. Francis contends the trial court erred in granting the petition because the proceeds of the realty were required for the care and maintenance of Decedent who was adjudicated incapacitated in 2008 and died in 2011. We agree with the trial court that the devise was not adeemed and, therefore, affirm.[1]

The trial court summarized the factual and procedural background of the case in its April 13, 2015 opinion. The trial court explained that the court adjudicated Decedent incapacitated on May 22, 2008 and appointed counsel as guardian of her estate. In his capacity as guardian, counsel petitioned the court for approval to sell a property owned by Decedent

_____

[1] The docket reflects that Francis appealed from decrees entered in two separate actions, the March 18, 2015 decree in the nonademption action as well as one issued on June 15, 2015, seeking substitution of security for his appeal. We have consolidated his appeals *sua sponte*. In his Appellee's Brief, Alfred contends that Francis has abandoned any issues relating to the substitution of security. We agree. His appeal is limited to the nonademption action. Therefore, we shall not address the trial court's disposition of the action involving substitution of security.

- 2 -

located at 126 East Berkeley Avenue in Clifton Heights, Pennsylvania ("126 East Berkeley"). The court approved the sale, which took place on October 1, 2009, with a net sale price of $110,497.25. All proceeds of the sale were used for the care and maintenance of Decedent. At the time of the sale, Decedent owned another residential property on Berkeley Avenue where she resided, as well as two houses and a vacant lot in Avalon, New Jersey.[2]

Decedent died on March 19, 2011, never having regained capacity prior to her death. On April 6, 2011, Decedent's March 27, 2007 Will was admitted to probate and Francis was appointed executor.[3]

Decedent's Will included devises of six parcels of real estate. Alfred was to receive 126 East Berkeley. Decedent's Last Will and Testament, 3/28/07, Item First. Adele and Francis were to receive properties located in

_____

[2] The guardian first sold Decedent's liquid assets to pay for Decedent's care, including Kimberly Clark stock owned jointly by Decedent, Francis, Alfred and Decedent's daughter, Adele Rich Tracy ("Adele"). Rather than distribute the proceeds totaling $87,282.20, the guardian used the proceeds for Decedent's care. N.T. Hearing, 12/15/14, at 22. The guardian next sold a vacant lot in Lehighton, Pennsylvania for approximately $25,000 in April of 2009, followed by 126 East Berkeley, which he sold in late 2009. *Id.* at 10-11. The proceeds of the realty sales were also used for Decedent's care and maintenance. *Id.* at 9-12. The 2009 fair market value for each of the Avalon homes was $650,000. The vacant Avalon lot sold in 2013 for $325,000. *Id.* at 21, 26.

[3] Alfred challenged the 2007 Will, which replaced a previous will that left all of Decedent's property to her three children in equal shares. Alfred claimed undue influence on the part of Francis. Alfred's petition was denied and no appeal was taken to this Court.

Avalon, New Jersey at 366 West 40th Street and 366 East 40th Street, respectively. *Id.* at Items Second and Third. All three children were to inherit, as joint tenants with rights of survivorship, a vacant lot in Avalon, New Jersey as well as a property located at 128 East Berkeley where Decedent resided until her death. *Id.* at Items Fourth and Sixth. Finally, Francis and Adele were to receive a lot located in Lehighton, Pennsylvania. *Id.* at Item Fifth. The remainder of Decedent's estate was to be divided in equal shares among Alfred, Francis and Adele. *Id.* at Item Ninth.

On December 15, 2014, the trial court conducted a hearing on Alfred's petition seeking a finding of nonademption of the net sales price for 126 East Berkeley. At the hearing, the guardian testified that the Orphans' Court appointed a vendor care provider for Decedent and it was the guardian's obligation to ensure there were sufficient funds to pay for her care. N.T. Hearing, 12/15/14, at 9. The cost of Decedent's care was approximately $13,000 per month while Decedent's total income from Social Security and rent from the New Jersey properties was approximately $5,000 per month. *Id.* at 13.

The guardian explained that as liquid assets were exhausted, it was necessary to sell off real estate to cover the monthly shortfall. Because the family had decided to keep Decedent in her home at 128 East Berkeley rather than move her into a nursing facility, selling that property was not a viable option. *Id.* at 9. Therefore, the guardian first sold the vacant lot

located in Lehighton, Pennsylvania, a property Decedent's Will devised to Francis and Adele. *Id.* at 10. Months later, when additional funds were required, he had to choose from the five remaining properties. Again, the property where Decedent resided was eliminated from consideration so the candidates for sale included 126 East Berkeley, the two houses in Avalon, and the vacant lot in Avalon. *Id.* The guardian explained that the vacant Avalon lot was not selected because it was an undersized lot that could not be sold without filing a zoning application to determine whether a marketable title could be conveyed. Not only would filing the application entail legal fees at a time when funds were required for Decedent's care, but also the adjoining property—another undersized lot—was owned by the Borough of Avalon, leaving the guardian to suspect he would not receive favorable consideration of an application when the borough itself was interested in the lot. *Id.* at 10-11.

The guardian noted that the East and West 40th Street houses in Avalon were covered by a blanket mortgage in the amount of $250,000, while there was small mortgage on 126 East Berkeley that he was able to satisfy with funds that came into the Estate. *Id.* at 11, 14.[4] In addition, there were ready buyers for 126 East Berkeley—Francis and his wife—who

_____

[4] A note signed by Adele in the amount of $129,000 represented a portion of the blanket mortgage on the Avalon houses. The money represented a loan from Decedent to Adele to help Adele get through a divorce. N.T. Hearing, 12/15/14, at 14.

were willing to pay close to market price for the property, allowing the guardian to avoid listing the property for sale. Consequently, the guardian made application to the court and, after a hearing, the court approved the sale of 126 East Berkeley. *Id.* at 11. The guardian stated that by the time of Decedent's death, all proceeds from the sale of 126 East Berkeley had been exhausted and approximately $20,000 to $25,000 was owed to the vendor care provider, meaning there was only "the real estate and not much else" to turn over to the personal representative when Decedent died. *Id.* at 12.

The guardian testified concerning the letter he sent to Alfred's counsel on December 26, 2012, in which he stated, "In closing kindly accept my assurances that under the Non-Ademption Provision of the Probate Code your client will receive a complete distribution as if the properties were never sold by the Guardian." The guardian explained:

> At the time I issued this letter on December 26, 2012, I was unaware of [*In re Estate of Fox*, 431 A.2d 1008 (Pa. 1981)], so I sent this letter out based upon what I understood the state of the law to be at that time. I hadn't done any research on it. It was clear that whichever property I sold, one of the three children were (sic) going to raise a stink about it, so I just figured they were going to be treated equally, I was going to treat them equally, and I did so on the basis of what I understood the law to be at that time.
>
> . . . .
>
> But I may also say at this time, [knowing of the *Fox* decision] would not have changed my decision-making . . . as to which property was being sold, because I also have an obligation to preserve assets, so I was selling the $25,000 lot initially, and

then when I had to make a second sale, as I said, I had a ready buy[er], it was only the $125,000 asset. So I was selling from the bottom up, not from the top down, because I believe that I also had an obligation to preserve assets, where I could, for my ward.

N.T. Hearing, 12/15/14, at 37-39.

By decree dated January 6, 2015, the trial court found that the property was not adeemed and that Alfred was entitled to the net sale price of the property, reduced by the amount Alfred still owed Decedent at the time of her death. Francis filed eight exceptions to the decree. On March 18, 2015, the trial court issued an amended decree reiterating that Alfred was entitled to the net sale price received for 126 East Berkeley less the amount Alfred owed Decedent. In an opinion issued the following day, the trial court addressed and denied each of Francis' exceptions.[5] This timely appeal followed.

Francis presents one issue for this Court's consideration:

I.  Did the Orphan[s'] Court err in permitting the legatee of a specific bequest made by a person subsequently deemed to be incapacitated and placed under the care of a guardian to avoid ademption of the bequest and receive the net proceeds of the sale of the real property

---

[5] On April 13, 2015, the trial court issued a second opinion following the filing of the appeal to this Court. The April 13, 2015 opinion incorporated by reference the court's March 19, 2015 opinion. The trial court did not issue an order pursuant to Pa.R.A.P. 1925(b) for the filing of a concise statement of errors complained of on appeal.

bequeathed[6] where the record conclusively establishes that the subject property was required to be sold in order to provide the guardianship estate sufficient funds for the care and maintenance of the incapacitated person, that there was no favoritism exhibited in choosing the property to be sold, and that all of the proceeds of the sale were used to pay for the reasonable care and maintenance of the then-incapacitated [D]ecedent?

Appellant's Brief at 5.

This Court has recognized:

The standard of review is well settled and requires that we be deferential to the findings of the Orphans' Court. Specifically,

When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion. However, we are not constrained to give the same deference to any resulting legal conclusions. Where the rules of law on which the court relied are palpably wrong or clearly inapplicable, we will reverse the court's decree.

*In re Estate of Miller*, 18 A.3d 1163, 1169 (Pa. Super. 2011) (*en banc*) (brackets removed) (quoting *In re Ware*, 814 A.2d 725, 731 (Pa. Super. 2002)).

_____

[6] Appellant refers to the devise of 126 East Berkeley as a "bequest." While it appears common not to see the terms "bequest" and "devise" distinguished, a "bequest" , strictly speaking, is a gift by will of personal property, while a "devise" signifies a disposition of real estate by Will. *Estate of Taylor*, 391 A.2d 991, 997 (Pa. 1978), (citing *Fleck v. Harmstad*, 155 A. 875 (Pa. 1931)).

Francis argues that the trial court erred by permitting Alfred to avoid ademption and receive proceeds from the sale of 126 East Berkeley in light of the fact the guardianship estate used the proceeds of the sale for the necessary care and maintenance of Decedent. Francis contends that regardless of whether the trial court agreed with the Supreme Court's reasoning in **Fox's Estate**, that court—as well as this Court—is bound by it. Appellant's Brief at 21. Therefore, he argues, the devise is adeemed in accordance with **Fox's Estate**. Francis further suggests that reading § 2514(16.1) without what he claims is the **Fox's Estate** ademption exception,[7] would lead to an "absurd result where every single sale of assets by a guardian of an incapacitated decedent [would be] subject to non-ademption" even when the sale is necessary to provide funds for an incapacitated person's care. Appellant's Brief at 19. Alfred, on the other hand, contends that the decision in **Fox's Estate** in fact supports the trial court's conclusion that his interest in the property did not adeem. As each of the parties contends the decision in **Fox's Estate** bears upon the outcome in this appeal, a closer examination of **Fox's Estate** aids in our analysis.

At the outset, it is important to recognize that the precise issue addressed in **Fox's Estate** is different from the issue presented in this

_____

[7] We note our Supreme Court did not refer to any part of its holding in **Fox's Estate** as an "exception." We therefore acknowledge this solely as Francis' characterization.

appeal. In **Fox's Estate**, our Supreme Court stated, "[t]he sole issue presented is whether a specific devise of real estate, which was sold during the period of a testator's incompetency, **includes the interest income** which accrued on the proceeds of the sale from the date of sale to the date of testator's death." **Fox's Estate**, 431 A.2d at 1009 (emphasis added). Here, the issue presented is whether the interest itself in the devised real estate is adeemed. In **Fox's Estate**, proceeds from the sale of a specifically devised property were used to purchase savings certificates earning interest at the rate of 6.5% per annum. **Id.** at n.1. The devisee argued she was entitled to the interest earned on the certificates prior to the decedent's death. The trial court agreed. Our Supreme Court reversed. In explaining its decision, the Court first set forth the general rule of ademption pertaining to property not in existence at the time of a testator's death.

> The general rule is that a specific devise will be adeemed if at testator's death the testator no longer possessed an interest in the property devised and no contrary intention is set forth in the will.
>
> It has long since been decided in this jurisdiction that a specific legacy or devise is extinguished if the property is not in existence or does not belong to the testator at the time of his death. Testator's intent is not relevant where the property devised or bequeathed in his will is not part of his estate at death. Where the legacy has been determined to be specific the legatee is entitled to the very thing bequeathed if it be possible for the executor to give it to him; but if not, he cannot have money in place of it. This results from an inflexible rule of law applied to the mere fact that the thing bequeathed does not exist, and it is not founded on any presumed intention of the testator. This rule is equally applicable where the specifically devised or bequeathed property is removed from testator during

his lifetime by an involuntary act or by operation of law. Thus, where it is established that the bequest or devise was specific and the nonexistence of the item in the testator's estate at the time of death, an ademption results.

*Id.* at 1010 (internal citations and quotations omitted). The harshness of this rule compelled our Legislature to act, and in the case of incapacitated persons, as the Supreme Court explained:

Our legislature recognized that such a rule of ademption was particularly harsh where the alienation of the property was at the direction of the guardian of an incompetent testator. In such cases a specific legatee or devisee was subject to the possibility of favoritism which guardians might be inclined to exercise among the named beneficiaries of the incompetent.

*Id.* Therefore, the legislature enacted § 2514(16.1)[8], which provides, for our purposes, that if property of an incapacitated person specifically devised is sold, the devisee has the right to the net sale price of the property. As applied to the issue in *Fox's Estate*, the Court wrote:

_____

[8] The probate code directs, in relevant part, that:

In the absence of a contrary intent appearing therein, wills shall be construed as to real and personal estate in accordance with the following rules:
. . . .

**(16.1) Nonademption; incapacity.**--If property of an adjudicated incapacitated person specifically devised or bequeathed is sold . . . , the specific legatee or devisee has the right to the net sale price . . . . This paragraph does not apply if subsequent to the sale . . . the testator has been adjudicated not to be an incapacitated person and survives the adjudication by one year.

20 Pa.C.S.A. § 2514(16.1).

- 11 -

Section 2514(16.1) was concerned with avoiding the harshness of the traditional rule of ademption in cases of estates of incompetents, not with enhancing the interest passed under a specific devise or bequest.  Restated, **section 2514(16.1) was not enacted to create a special proprietary interest in the income generated by the asset prior to the incompetent testator's death. Rather, it was to avoid the extinction of the interest altogether** where a guardian sells or exchanges the asset during the testator's lifetime.

*Id.* at 1011 (emphasis added).

The Court therefore concluded:

Absent the provisions of section 2514(16.1), [appellee's] interest would have been completely extinguished as a result of the ademption.  That result was altered only because of the legislative enactment in section 2514(16.1).  The legislature saw fit to preserve for her only the net proceeds.

*Id.* at 1012.

*Fox's Estate* did no more than resolve the issue as to who was entitled to the income derived from a specifically devised property when the property was sold during the lifetime of an incapacitated person.  *Fox's Estate* recognized that the treatment of income from devised property is treated differently from the interest in the property itself.  For our present purposes, the decision in *Fox's Estate* is instructive not for its specific holding regarding income derived from devised property, but for its discussion relating to the ademption of devised interests and how the general rule has been legislatively altered in the case of an incapacitated person.  In that regard, *Fox's Estate* did not alter or create an exception to the plain and unambiguous language of § 2514(16.1), which, as the Court

recognized, preserves the interest of a specific devisee in the net sale price of a devised property when sold during the life of an incapacitated person. Therefore, the Court's discussion of § 2514(16.1) is supportive of the trial court's decision in this case that Alfred's interest in the 126 East Berkeley property was not adeemed.

Francis places great emphasis upon the following passage from *Fox's Estate* to argue that Alfred's interest in the property adeemed:

> In the event that the proceeds of the sale of the specifically devised real property had been required to be used for the care and maintenance of the incompetent during his lifetime, the law is clear the proceeds would have been available for that purpose and the devise deemed adeemed to the extent that the fund was consumed for that purpose. 20 Pa.C.S.A. § 2514(18). *Lloyd v. Hart*, 2 Pa. 473 (1846). This again emphasizes that the specific devisee acquires no proprietary interest in the asset or the income generated by it prior to testator's death. The devisee is entitled to the asset and to the benefits arising from the property only after the testator's death. 20 Pa.C.S.A. § 3543(b)[.]

*Fox's Estate*, 431 A.2d at 1011 (citation omitted). Our Supreme Court made this statement after reaching its conclusion that interest income was not included with the devise in that case. Nonetheless, Francis submits that since the proceeds of 126 East Berkeley were required for the care and maintenance of the Decedent, the devise is adeemed under this passage from *Fox's Estate*. Francis notes that Alfred acknowledges this passage from *Fox's Estate*, but disputes its application because it contravenes the language of the statute, because the Supreme Court's statement was merely *dicta*, and because the guardian had other options for funding the estate.

Appellant's Brief at 18. We disagree that this passage compels the conclusion that Alfred's interest in 126 East Berkeley adeemed.

To the extent the above passage from *Fox's Estate* discusses ademption of proceeds expended for an incompetent's care, we recognize that this statement cannot be reconciled with the plain language of § 2514(16.1), which saves proceeds from the sale of an incompetent's real estate from ademption. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Section 2514(16.1) does not include any language recognizing or even suggesting an exception for proceeds used for care of the decedent. We also note that while the Supreme Court appears to have made this seemingly contradictory statement, it cites at the same time as statutory authority § 2514(18),[9] whose scope is different from that of § 2514(16.1). Section 2514(18) does

_____

[9] Section 2514(18) provides in relevant part:

> **(18) Nonademption; balance.**--A devisee or legatee of property specifically devised or bequeathed has the right to any of that property which the testator still owned at his death and:
>
> (i) any balance of the purchase price or balance of property to be received in exchange, together with any security interest, owing from a purchaser to the testator at his death by reason of a sale or exchange of the property by the testator[.]

20 Pa.C.S.A. § 2514(18).

- 14 -

not refer to incapacity, but rather addresses a devisee's right to the **balance** of the purchase price of a property as of the time of a testator's death. Because the passage cited above was made in the context of referring to § 2514(18), we cannot accept that this passage was meant to contradict any of the Court's earlier discussion on the applicability of § 2514(16.1), or to create an exception to the clear language of that statutory provision. We therefore agree with Alfred that this language, which was not necessary to decide the issue in *Fox's Estate*, is *dicta*. As *dicta,* the comments do not constitute binding authority. *In re Cassell's Estate*, 6 A.2d 60 (Pa. 1939).

*Lloyd v*. *Hart*, 2 Pa. 473 (1846), also cited by the Supreme Court in the above passage does not compel a different result. *Lloyd* involved the unspent balance of proceeds from the sale of an incapacitated person's real estate. The question presented was whether the surplus of funds from the sale of the incapacitated person's real estate not used for his maintenance and care was to pass to his next of kin or according to the will of the decedent with respect to the real estate sold. The Court held the surplus retained the impress of real estate and that the sale worked "no conversion of the surplus, but . . . remains real estate and is distributed as such according to the rules of descent" because what remained after payment of his debts "retained the impress of real estate." *Id.* at 473, 479. *Lloyd* did not address the issue of ademption with respect to real estate sold during the life of an incapacitated person. Suffice it to say, the case was decided

- 15 -

long before our legislature passed the statutory scheme under § 2514(16.1) specifically to address ademption of property of an incapacitated person. *Lloyd*, therefore, offers little in terms of precedential value for this appeal.

It is clear the guardian here had to expend estate assets to pay the vendor care provider. If Decedent, while competent, decided to sell the Lehighton or 126 East Berkeley properties to support herself, there is no question those devises would have adeemed. However, she did not make that decision and, indeed, could not make that decision due to her incapacity. Had she regained capacity for a period of a year after the properties were sold and elected not to alter her will to "make up for" the reduction of any of her children's shares in the estate, her inaction would validate the guardian's choice of properties to liquidate. However, that did not occur. By enacting § 2514(16.1), our legislature avoided the "particularly harsh" ademption rule "where the alienation of the property was at the direction of the guardian of an incompetent testator. . . [who] might be inclined to exercise [favoritism] among the named beneficiaries of the incompetent." *Fox's Estate*, supra*.*

We do not suggest that the guardian acted in bad faith in selling the most valuable property devised solely to Alfred in lieu of other even more valuable assets available for sale. Although the guardian explained his strategy of selling from "the bottom up," N.T. Hearing, 12/15/14, at 38, we note the record is silent as to whether the guardian even explored collecting

any or all of the $129,000 owed to Decedent by Adele instead of selling 126 East Berkeley in a transaction that netted an amount less than that loan. Regardless, the fact remains that a property devised to Alfred was removed from the estate by virtue of a decision of the guardian rather than by action on the part of the incapacitated Decedent.

We recognize that the record reveals a certain level of animosity between the guardian and Alfred. The guardian freely admitted a confrontation after which he told Alfred not to "step into [his] office again." N.T. Hearing, 12/15/14, at 17. However, the trial court did not express any concern with regard to the guardian's decision to sell certain properties approved by the court while maintaining others. We acknowledge that, absent an abuse of discretion, credibility determinations are for the trial court, not this Court. Therefore, we shall not disturb them. *In re Estate of Miller, supra*, 18 A.3d at 1169. We will reverse, however, a decree from the orphans' court if that court has relied on rules of law that are palpably wrong or clearly inapplicable. *Id.*

Here, the court explained:

[Francis] argues that this [c]ourt erred by failing to take into account section 2514(18). The [c]ourt did not take section 2514(18) into account because it does not apply to the facts of this case. Section 2514(16.1), by its clear and unambiguous language, considers the unique situation, as we have here, in which a decedent has been adjudicated incapacitated prior to death and an appointed guardian sells the incapacitated person's property which has been specifically devised. Section 2514(18) simply reinforces that a beneficiary of specifically devised

property is entitled to proceeds from that property and has no relation per se to incapacity.

[Francis] also argues that section 2514(18) instructs that when the proceeds from the sale of a property, sold by the [g]uardian, is used for the care, maintenance, health and wellbeing of the incapacitated person that gift lapses and the person who was to inherit the property is not entitled to the net proceeds of the sale. However, section 2514(18) . . . quite simply, does not provide such an instruction.

Trial Court Opinion, 3/19/15, at 3.

We find the trial court appropriately relied on the provisions of § 2514(16.1) and correctly applied them to the facts of this case. Therefore, we find no basis for disturbing the trial court's ruling.

Decrees affirmed.[10] Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/20/2016

---

[10] See note 1, *supra*.

- 18 -