J-A03014-17
J-A03015-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE:  ESTATE OF LAWRENCE L. RIDDLE, DECEASED | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : | |
| APPEAL OF:  KRISTINA M. RIDDLE, EXCEPTOR/BENEFICIARY | : : : : : | No. 608 MDA 2016 |

Appeal from the Decree November 4, 2015
In the Court of Common Pleas of York County
Orphans' Court at No(s): 6711-0442

*****

| | | |
|---|---|---|
| IN RE:  ESTATE OF LAWRENCE L. RIDDLE, DECEASED | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : : | |
| APPEAL OF:  ERIC RIDDLE | : : : : | No. 609 MDA 2016 |

Appeal from the Decree November 4, 2015
In the Court of Common Pleas of York County
Orphans' Court at No(s): 6711-0442

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MARCH 26, 2018**

These are consolidated appeals[1] from the decree, entered in the Court

of Common Pleas of York County, confirming the First and Partial Account of

---

[1] We have consolidated the appeals filed at 608 MDA 2016 and 609 MDA 2016. **See** Pa.R.A.P. 513 ("Where there is more than one appeal from the same order, . . . the appellate court may, in its discretion, order them to be argued together in all particulars as if but a single appeal.").

Eric J. Riddle, Executor of the Will of Lawrence L. Riddle, Deceased, and the Second and Final Account of David A. Mills, Administrator d.b.n.c.t.a. Upon careful review, we affirm.

Lawrence Riddle ("Testator") died on February 27, 2001, unmarried, leaving a will dated March 31, 2010, which was duly probated by the Register of Wills of York County. Letters Testamentary were issued to Eric J. Riddle, the Testator's son and the executor named in his will ("Eric"). Of relevance here, Item 3 of Testator's will bequeathed the sum of $10,000 to each of his grandchildren, Magnolia Riddle, Marshall J. Riddle, and Sage M. Riddle. Item 4 provided as follows:

> It is my intent that the real estate located at 27 North Beaver Street, York, Pennsylvania [("Beaver Street Property")], . . . be sold as soon as possible and the net proceeds distributed as hereinbefore provided. It is my intent that the specific bequest to my herein named grandchildren, Magnolia Riddle, Marshall J. Riddle, and Sage M. Riddle, all of York, Pennsylvania, shall be funded from the proceeds from the sale of the [Beaver Street Property]. Additionally, the balance of net proceeds from the sale of the [Beaver Street Property] shall be placed in Trust for the benefit of my daughter, Kristina M. Riddle, of York, Pennsylvania, to be held in trust as hereinafter described.

Last Will and Testament of Lawrence L. Riddle, 3/31/10, at Item 4.

On April 16, 2012, Kristina Riddle, Testator's daughter ("Kristina"), filed a petition to show cause why Eric, as executor, should not be ordered to file an account. On May 11, 2012, Eric filed an answer to the petition as well as an informal account. On July 10, 2012, Kristina filed exceptions to the informal account, to which the Eric responded on August 9, 2012.

- 2 -

Thereafter, on September 20, 2012, Eric filed a petition for declaratory judgment, seeking an interpretation of Items 1 and 4 of Testator's will. Specifically, Eric asked the court to decide whether the clause in Item 1 directing the payment of "all [Testator's] just debts" requires the estate to pay certain mortgages and liens against the Beaver Street Property and whether the term "net proceeds" as used in Item 4 creates an ambiguity requiring the admission of extrinsic evidence. By opinion and order dated January 30, 2013, the Honorable Penny L. Blackwell concluded that the mortgages and liens on the Beaver Street Property were required to be satisfied from the estate, prior to the payment of any bequests, and that the gifts made by the Testator to his three grandchildren under Item 4 were specific bequests to be paid from the sale of the Beaver Street Property, and that those bequests would be subject to ademption in the event the sale of the property yielded insufficient proceeds.

Both Kristina and Eric filed exceptions to the court's January 30, 2013 decree. In her exceptions, Kristina sought clarification as to the court's ruling, and requested that "the trusts and bequests of Items 3 and 4 of the Will should be funded to the full market value of the Beaver Street property." Exceptions of Kristina M. Riddle, 2/11/13, at ¶ 2. Eric took exception to the court's finding that the mortgages and liens on the Beaver Street property must be satisfied out of the personalty of Testator's estate.

On June 24, 2013, Kristina filed a petition to void the transfer made by Eric, as executor, to himself, individually, of Testator's property known as

4165 Mt. Pisgah Road ("Mt. Pisgah Road Property"). On July 8, 2013, the court ordered that the property be re-conveyed to the estate and that Eric hold harmless the estate "for any and all liens and encumbrances or claims whatsoever" as a result of the original transfer out of the estate. The court also ordered Eric to file a formal account within 45 days and directed that trial would be scheduled after September 6, 2013. Eric filed his account, Kristina filed objections, and a trial was ultimately held on September 17, 2013. That same day, the Orphans' Court entered an order memorializing a settlement reached between Eric and Kristina, which provided, in pertinent part, as follows:

1. Eric was to receive the Mt. Pisgah Road Property and a greenhouse,[2] which was situated in part on the Mt. Pisgah Road Property and, in smaller part, on the Riddle Road Property;

2. Kristina was to receive the Riddle Road Property;

3. Kristina was to lease to Eric that small portion of the Riddle Road Property upon which a portion of the greenhouse was situated;

4. Eric and Kristina were to each pay their proportionate share of inheritance tax;

5. Kristina was to be responsible for paying the $10,000 bequests to each of her three children pursuant to Item 3 of Testator's will; and

6. Eric was removed as executor and David Mills, Esquire, was assigned to complete the administration of the estate as administrator, d.b.n.c.t.a.

---

[2] Eric operates a business on the Mt. Pisgah Road Property. The greenhouse that encroaches on the Riddle Road Property is used in the course of that business.

*See* Orphans' Court Order, 9/17/13.

Subsequent to the entry of the order memorializing the parties' settlement of this matter, Judge Blackwell retired and the matter was reassigned to the Honorable John S. Kennedy. In the interim, Eric and Kristina had not been able to reach an agreement as to certain issues left open by the September 17, 2013 settlement. On September 26, 2014, after a status listing, Judge Kennedy issued an order stating as follows:

> We'll direct that the proposed resolution the [c]ourt has for this matter is for the case to be relisted for audit. If no creditors appear at the audit, any outstanding claims would be dismissed, and we would accept the accounting as filed.
>
> It would be our intention then, within three months after that audit, if the parties can't resolve the real estate distribution in a satisfactory manner, the [c]ourt would order the property sold, and the monetary proceeds would be divided according to the will among the beneficiaries.
>
> We'll direct that [K]ristina Riddle and Eric Riddle should appear on November 17th at 1:30 so that they're aware of the [c]ourt's proposed resolution. If they can reach an agreement on how to resolve the matter prior to that time, they can notify the [c]ourt.

Order, 9/26/14.

On December 1, 2014, Kristina filed a petition to enforce Judge Blackwell's settlement order. Kristina alleged that Eric had failed to comply with the parties' agreement by demanding a lease on additional property that was to be conveyed to Kristina. On January 13, 2015, Attorney Mills, who had taken over administration of the estate, filed a Second and Final Account, to

which Kristina filed objections in which she sought distribution in accordance with the September 17, 2013 settlement order.

On June 3, 2015, Attorney Mills filed a petition for leave to resign as administrator, in which he averred that "[t]he Estate is not being administered in accordance with the September 17, 2013 settlement the beneficiaries reached prior to the appointment of [Attorney Mills] as Administrator d.b.n.c.t.a.," Petition for Leave to Resign, 6/3/15, at ¶ 10; that he had not been paid for work performed on behalf of the estate; and that it was in the interests of the estate to appoint a new administrator d.b.n.c.t.a.

On June 3, 2015, the court held a status listing at which counsel for the parties argued their clients' positions as to the implementation of Judge Blackwell's September 17, 2013 settlement. At the conclusion of the listing, the court entered an order stating as follows:

> It's clear that the parties have different interpretations of Judge Blackwell's order[.]
>
> It appears as though the parties can't agree as to the amount of property that should be apportioned as it relates to the greenhouse, they can't agree as to the property that Kristina Riddle was to have been conveyed, and there is also no agreement as to the long-term lease of the property to which Mr. Riddle was to have [a lease] for the greenhouse.
>
> Accordingly, the parties are just at a loss as to how to divide the remaining property and the Estate, and we had placed the parties on notice in September of 2014 that we would have the case listed for audit. If no creditors appeared at that time, outstanding claims would be dismissed, and we would accept the accounting as filed.
>
> We did that. We then stated it would be our intention that within three months after the audit, if the parties could not resolve the real estate distribution in a satisfactory manner, we'd order the

- 6 -

property sold, and the monetary proceeds would be divided according to the Will and among the beneficiaries.

Accordingly, we'll direct that the parties would have 30 days to resolve this controversy. If it's not resolved, we direct that [Attorney] Mills would take action to have the property listed for public auction, and obviously his fees will be paid from the proceeds that come out of the public auction, and the remaining proceeds would be divided among the beneficiaries pursuant to the Will.

For the record, [Attorney] Mills' petition to resign as Administrator is denied for now.

Order, 6/10/15.

Kristina filed exceptions to the June 10, 2015 order, again seeking distribution of the estate in accordance with Judge Blackwell's September 17, 2013 order. Eric filed cross-exceptions seeking distribution in accordance with the terms of the Testator's will. By order dated October 26, 2015, the court dismissed the exceptions and cross-exceptions.

On October 14, 2015, Attorney Mills filed a motion for adjudication of the First and Partial Account filed by Eric Riddle and the Second and Final Account filed by Attorney Mills. In his motion, he asked that the court order the estate's real estate sold, with the proceeds used for "payment of debts, expenses and taxes, as outlined, and distribution of the remainder of the sales proceeds, if any, in accordance with the agreement that the parties reached in court on September 17, 2013[.]" Motion for Adjudication, 10/14/15, at 14.

On November 4, 2015, the court issued its adjudication of Attorney Mills' Second and Final Account, in which it ordered that, because the estate possessed insufficient funds to pay expenses and taxes, all real estate was to

be sold to pay those taxes and expenses. Any remaining proceeds from the sale of the Mt. Pisgah Road and Riddle Road properties was to be paid to Eric and Kristina, respectively. Kristina filed exceptions to the adjudication, which were denied by operation of law on March 21, 2016. Kristina filed a timely notice of appeal to this Court on April 14, 2016; Eric filed his timely notice of appeal on April 15, 2016.

Kristina raises the following issues for our review:

1. Whether [d]istribution in [k]ind of the real estate known as Windsor Township, York County Tax Map 0028 should be made to Kristina Riddle, Testator's daughter[,] for herself and for her children, Testator's grandchildren, in accordance with the stipulated settlement [o]rder of Judge Penny L. Blackwell of September 17, 2013.

2. Whether any [e]state expenses, taxes, and claims are payable by the specific beneficiaries Kristina Riddle and her children . . . and any proper procedure or basis was or could be established to assess on them any such.

3. Whether Eric Riddle, [e]xecutor removed for cause and remainder beneficiary under the [w]ill, should be adjudicated liable and surcharged for all unpaid expenses, taxes, and claims of the [e]state for various misdeeds and malfeasance and for his contempt of and failure and refusal to acknowledge and comply with the stipulated settlement [o]rder of September 17, 2013[,] and pay attorney's fees to or on behalf of Kristina Riddle accumulated from the date of said [o]rder.

Appellant's Brief of Kristina Riddle, at 11.

Eric raises the following claims for our review:

1. Whether the court committed an error of law or abused its discretion by declining to enter declaratory judgment in favor of Eric J. Riddle regarding the intent of Testator's will[,] including when the court determined the debts and expenses on a parcel of real estate must be paid from the personal property rather than the land itself?

2. Whether the court committed an error of law or abused its discretion by directing the sale of all real estate when Testator's [w]ill does not provide for all real estate to be listed for public sale[,] but instead directs the net proceeds, if any, from the sale of one parcel be used to fund specific bequests to certain individuals and a trust, and the balance of the [e]state be given to another individual?

3. Whether the court committed an error of law or abused its discretion by removing the [e]xecutor without cause[,] especially when the [e]xecutor complied with the directions and advice of his then-attorney?

4. Whether the court committed an error of law or abused its discretion by accepting any alleged settlement proposal after conferring in chambers outside the presence of Eric Riddle and when he was to be removed as executor and further when the parties should have adjourned until such time as the executor could have obtained counsel to represent and defend his interests and rights as they related to the [e]state?

5. Whether the court committed an error of law or abused its discretion by failing to require Attorney John G. Bergdoll to remain financially liable to Eric Riddle for any monetary losses sustained by Eric Riddle because of the improper mortgage placed by Attorney Bergdoll on all of Testator's property merely to protect his own attorney fees[,] for which the [e]state was not responsible?

6. Whether the court committed an error of law or abused its discretion by reducing the amount of reimbursement to Eric Riddle, who advanced substantial sums for the payment of [e]state expenses, from $57,017.02 as shown on the Second and Final Accounting to $31,866.06 as stated in the October 26, 2015 [a]djudication[,] especially considering that he paid insurance and bills covering the [e]state property in which Kristina Riddle has been living and, therefore, any distribution to Kristina Riddle should be reduced according to amounts Kristina Riddle should have paid and when the submission of the February 2015 claim was in addition to the amount stated in the Second Accounting?

Appellant's Brief of Eric Riddle, at 4-5.

Kristina first claims that the Orphans' Court erred in failing to enforce the stipulated settlement agreement memorialized in Judge Blackwell's September 17, 2013 order. Kristina argues that, once entered, the order became final. Because neither party appealed the order, it became the law of the case and Judge Kennedy was without authority to rescind or revoke it. Accordingly, Kristina asserts that Judge Kennedy's adjudication ordering the properties to be sold was in error.

Eric agrees that Judge Kennedy lacked authority to order the sale of the real estate, but disagrees that Judge Blackwell's order must enforced. Eric argues that the order was not a final order and, as such, Judge Kennedy possessed the authority to modify or rescind it. Eric asserts that: he never agreed to the terms of the stipulation; the parties had "vastly different interpretations" of the stipulation; and neither party could agree as to how the stipulation should be implemented. Appellee's Brief of Eric Riddle, at 11.

The Pennsylvania rule on stipulations is long-settled. Parties may bind themselves on matters relating to individual rights and obligations, so long as their stipulations do not affect the court's jurisdiction or due order of business. ***Tyler v. King***, 496 A.2d 16, 21 (Pa. Super. 1985), citing ***Foote v. Maryland Casualty Co.***, 186 A.2d 255 (Pa. 1962). Principles of contract law are utilized to interpret stipulations. ***Tyler***, 496 A.2d at 21. Accordingly, in order for a

stipulation to be binding on the parties and court, it must first meet the criteria of an enforceable contract.[3]

> To be enforceable, a settlement agreement must possess all of the elements of a valid contract. **Gogel v. Blazofsky**, [] 142 A.2d 313, 315 ([Pa. Super.] 1958) (citing **Sale v. Ambler**, [] 6 A.2d 519 ([Pa.] 1939)).  As with any contract, it is essential to the enforceability of a settlement agreement that "the minds of the parties should meet upon all the terms, as well as the subject-matter, of the [agreement]." **Onyx Oils & Resins, Inc. v. Moss**, [] 80 A.2d 815, 817 ([Pa.] 1951).

**Mazzella v. Koken**, 739 A.2d 531, 536 (Pa. 1999).  If all of the material terms of a bargain are agreed upon, the settlement agreement will be enforced.  **Id.** (citation omitted).  If, however, there exist ambiguities and undetermined matters which render a settlement agreement impossible to understand and enforce, such an agreement must be set aside. **Id.** (quotation marks and citation omitted).  The intent of the parties is a question of fact which must be determined by the factfinder.  **Sociedad Comercializadora y De Servicios Unifrutti Traders Limitada v. Quizada**, 641 A.2d 1193, 1197 (Pa. Super. 1993), opinion reinstated (Apr. 7, 1994), quoting **Johnston v. Johnston**, 499 A.2d 1074, 1076–77 (Pa. Super. 1985).  A reviewing court must defer to the findings of the trier of the facts if they are supported by the evidence.  **Id.**

---

[3] We note that Kristina's appellate brief fails to address the matter of whether an enforceable agreement ever existed, instead proceeding on the assumption that the stipulation met the criteria for an enforceable contract.

Here, the Orphans' Court concluded that the parties failed to agree on material terms of the contract. At a status hearing on June 3, 2015, the court stated as follows:

> THE COURT: It appears as though the parties can't agree as to the amount of property that should be apportioned as it relates to the greenhouse, they can't agree as to the property that Kristina Riddle was to have been conveyed, and there is also no agreement as to the long term lease of the property to which Mr. Riddle was to have for the greenhouse.
>
> Accordingly, the parties are just at a loss as to how to divide the remaining property and the estate, and we had placed the parties on notice in September of 2104 that we would have the case listed for audit. If no creditors appeared at that time, the outstanding claims would be dismissed, and we would accept the accounting as filed.
>
> We did that. We then stated it would be our intention that within three months after the audit, if the parties could not resolve the real estate distribution in a satisfactory manner, we'd order the property sold, and the monetary proceeds would be divided among [sic] the will and among the beneficiaries.

N.T. Hearing, 6/3/15, at 27-28.

The court's conclusion is supported in the record. Specifically, the record demonstrates that, at the time the agreement was purportedly reached, the parties had no meeting of the minds as to the extent of the property to be conveyed to each party, as well as the extent of the property which was to be subject to a lease in favor of Eric Riddle. At a prior status hearing on September 23, 2014, over one year after the purported agreement was reached, Kristina's counsel, John Bergdoll, Esquire, stated as follows:

> I can't by survey define that property [intended for distribution to Kristina] because the deed I received has several different pieces,

- 12 -

and I think it's incumbent upon the estate to do a couple of things, one would be to have the pieces surveyed, at least the piece to be given to my client so that we know exactly where it is and that it's what we agreed to, and then, secondly, that the property, in fact, is free and clear of liens.

N.T. Status Hearing, 9/23/14, at 6.

At that same status listing, Attorney Bergdoll further suggested that the estate subdivide the property that was to be distributed to Kristina in order to provide her with funds for payment of inheritance tax as well as the $30,000 in bequests owed to Testator's grandchildren. Counsel for the estate disputed that the estate should be responsible for paying for the subdivision. This issue was not addressed in the "settlement" memorialized in Judge Blackwell's order.

Similarly, from the very moment the purported settlement was consummated, the parties disagreed as to the extent of that portion of Kristina's property which would be subject to a long-term lease in favor of Eric. The following exchange took place during Judge Blackwell's recital of the settlement terms:

> [THE COURT:] The Court does note that the greenhouse is apparently – and this is to be double-checked – on a very small part of the property that Kristina Riddle will receive. The parties have agreed to work out some form of reasonable accommodation to have Eric Riddle lease that piece of property from Kristina Riddle.
>
> ATTORNEY BERGDOLL: And we understand that is **less than an acre**, that amount.
>
> MR. ERIC RIDDLE: It's **probably two to three acres**. It's a small part of it.

- 13 -

N.T. Hearing, 9/17/13, at 89 (emphasis added).

Because there existed ambiguities and undetermined matters which rendered the settlement agreement impossible to understand and enforce, *Mazzella*, *supra*, the agreement was not the law of the case and was properly set aside. Judge Kennedy acted within his discretion in setting the agreement aside after over a year and a half of the parties being unable to agree on its terms, and after several fruitless attempts to assist the parties in coming to a resolution.

In her second appellate claim, Kristina argues that, as specific beneficiaries, she and the Testator's grandchildren should not be liable for any of the estate's expenses (including the mortgage on the Beaver Street Property), taxes, or claims. Citing the order of abatement found in section 3541 of the Probate, Estates and Fiduciaries ("PEF") Code, Kristina asserts that Eric, as residuary beneficiary, should bear the burden of those payments.

In response, Eric argues that Testator made a specific, as opposed to demonstrative, devise of real estate to Kristina and her children. As such, Eric claims, it is subject to any security interest, such as a mortgage, existing as of the Testator's death pursuant to 20 Pa.C.S.A. § 2514. Eric further asserts that the Testator's own language confirms his intent that the real estate, and not the residuary estate, be charged with payment of its secured debt, because he specifically provided that the bequests were to be paid with the "net proceeds" from the sale of the residence.

The relevant portions of the will are as follows.  Under Item 1, Testator directed that "all my just debts and funeral expenses be paid as soon after my demise as may be convenient."  Item 3 provided bequests in the amount of $10,000 to each of his three grandchildren, who are also the children of Kristina, as follows:

> I give, devise, and bequeath to each of the following individuals the sums after his or her name provided he or she survives me for a period of thirty (30) days:
>
> A. My granddaughter, Magnolia Riddle, of York, Pennsylvania, the sum of ten thousand dollars ($10,000.00);
>
> B. My grandson, Marshall J. Riddle, of York, Pennsylvania, the sum of ten thousand dollars ($10,000.00); and
>
> C. My grandson, Sage M. Riddle, of York, Pennsylvania, the sum of ten thousand dollars ($10,000.00).

Last Will and Testament of Lawrence L. Riddle, 3/31/10, at Item 3.

> Finally, Item 4 provided:
>
> It is my intent that the [Beaver Street Property] be sold as soon as possible and the net proceeds distributed as hereinafter provided.  It is my intent that the specific bequest[s] to my herein named grandchildren . . . shall be funded from the proceeds from the sale of the [Beaver Street Property].  Additionally, the net proceeds from the sale of the [Beaver Street Property] shall be placed in Trust for the benefit of [Kristina].

*Id.* at Item 4.

We must first determine whether the bequests set forth in Items 3 and 4 of Testator's will are specific or demonstrative.  If we conclude that they are specific, we must then look to the language used by the Testator to determine whether the secured debts associated with the Beaver Street property were

to be paid from the residue of the estate, or from the proceeds of sale of the property itself, prior to payment of the bequests.

> We begin by observing:
>
> A specific bequest or devise is a gift of a particular article or other property, real or personal, which is distinguishable from all other things of the same kind. A specific bequest can only be satisfied by the delivery of the particular item. ***In Re Estate of Fox***, [] 431 A.2d 1008 ([Pa.] 1981); ***Soles Estate***, [] 304 A.2d 97 ([Pa.] 1973). Where at the time of the testator's or testatrix's death he or she no longer owns an interest in the thing specifically devised, the gift is extinguished or adeemed. ***In Re Estate of Nakoneczny***, [] 319 A.2d 893 ([Pa.] 1974).
>
> If a monetary legacy is given with reference to a particular fund, but only as an indication of a convenient source for satisfying such legacy, it will be considered demonstrative and not specific. ***Crawford's Estate***, [] 143 A. 214 ([Pa.] 1928). If the legacy is to be paid from a larger source, the bequest will be considered demonstrative. ***Welch's Appeal***, 28 Pa. 363 (1857).

***Estate of Stalnaker***, 479 A.2d 612, 615 (Pa. Super. 1984).

A will must be construed according to the intention of the testator as expressed in the language he used in that instrument. ***In re Ruud's Estate***, 35 A.2d 772, 773 (Pa. Super. 1944). The language used in a will is to be understood in its ordinary and popular significance and the testator is presumed to know the plain meaning of the language he employed in drafting his will. ***Id.*** "Courts are not permitted to determine what they think the testator might or would have desired under the existing circumstances, or even what they think the testator meant to say." ***In re Estate of Dex***, 596 A.2d 1143, 1145 (Pa. Super. 1991).

Here, the Testator made clear his intentions by the words he used. Testator provided: "It is my intent that the **specific bequest** to my herein named grandchildren . . . shall be funded from the proceeds from the sale of the real estate located at 27 North Beaver Street[.]" Last Will and Testament of Lawrence L. Riddle, 3/31/10, at Item 4. From that language, it is apparent that Testator intended the gifts to his grandchildren to be specific bequests, to be satisfied only through the sale of the Beaver Street property. *Stalnaker*, *supra*. The meaning of the Testator's words is clear and unambiguous and, as a result, must be given effect.

Similarly, the gift to Kristina is a specific bequest of an unspecified sum defined by the Testator as the "net proceeds from the sale" of the Beaver Street property. This bequest is to be satisfied from, and is indeed quantified by, the net proceeds, if any, of the Beaver Street property. Accordingly, we must determine if Testator intended the phrase "net proceeds" to mean the proceeds of sale before or after satisfaction of the secured debt associated with the property.

As noted above, the Testator directed in Item 1 of his will that "all my just debts and funeral expenses be paid as soon after my demise as may be convenient." Last Will and Testament of Lawrence L. Riddle, 3/31/10, at Item 1. Section 2514 of the PEF Code sets forth the rules of interpretation to be applied to wills. Of relevance to our inquiry is the following:

**§ 2514. Rules of Interpretation.**

> **In the absence of a contrary intent appearing therein**, wills shall be construed as to real and personal estate in accordance with the following rules:
>
> . . .
>
> (12.1) Property subject to a security interest. – A specific devise or bequest of real or personal property passes that property subject to any security interest therein existing at the date of the testator's death, without any right of exoneration out of any other estate of the testator regardless whether the security interest was created by the testator or by a previous owner and any general directive in the will to pay debts.

20 Pa.C.S.A. § 2514(12.1) (emphasis added).

In determining whether a will evidences a "contrary intent," "[i]t is not essential that the will should contain an express provision that land specifically devised shall not be taken subject to the payment of a mortgage debt; it is sufficient if the will, taken as a whole, clearly implies that such debt is to be paid out of other property." *In re Hill's Estate*, 87 Pa. Super. 173, 176 (1926). However, we have held that a general direction that the debts and funeral expenses of a testator be paid is not sufficient to take the case out of the operation of the statute. *See id.* Rather, "such direction amounts to nothing more than that the debts shall be paid in the manner provided by law." *Id.*

Our Supreme Court, in *In re Earle's Estate*, 199 A. 173 (Pa. 1938), addressed a nearly identical bequest and concluded that the beneficiary was entitled only to the equity in the property. There, like here, the testator

directed that certain property be sold, with the proceeds to be placed in trust for the designated beneficiary:

> I order and direct my executors, as soon as conveniently may be after my decease, to sell and convert into money the property now constituting my home, 2139 Locust Street, Philadelphia, and I give and bequeath the proceeds of such sale for the benefit of my great-niece, Annie Marie Collins[,] unto my trustee by this my will appointed.

*Id.* at 175. The Court looked to the language used by the testator and concluded that "[t]he expression 'proceeds of such sale,' as used by testatrix, can refer only to the net proceeds, namely, the sum which the executors received after the encumbrances and the costs and expenses of the sale had been deducted from the selling price of the property." *Id.* Moreover, the Court cited the then-existing version of section 2514(12.1)[4] and found that there was "no reason why this section of the Wills Act should not apply as well to a devise to executors with direction to sell and convey the real estate, as to an absolute devise of real estate." *Id.*

In the case at bar, the language of the testator even more clearly evidences an intent to give the proceeds of sale *after* payment of the secured

_____

[4] Section 18 of the Wills Act of 1917, 20 P.S. § 242, was substantively identical to current section 2514(12.1) and provided as follows:

> Unless the testator shall otherwise direct by his will, the devisee of real estate which is subject to a mortgage shall take subject thereto, and shall not be entitled to exoneration out of the other estate of the testator, real or personal; and this whether the mortgage was created by the testator or by a previous owner or owners, and notwithstanding any general direction by the testator that his debts be paid.

- 19 -

debt and expenses associated with the property. Testator here used the term "net proceeds," which is defined as "[t]he amount received in a transaction minus the costs of the transaction (such as expenses and commissions)." Black's Law Dictionary (10th ed. 2014). *See also Earle's Estate*, 199 A. at 175 (defining "net proceeds" as "the sum which the executors received after the encumbrances and the costs and expenses of the sale had been deducted from the selling price of the property."). To conclude Testator intended to give anything other than the proceeds of sale *after* the payment of the secured debt and expenses would be to ignore entirely the presence of the word "net" in the clause in question. It is well settled that the courts prefer a construction which "gives effect to all parts of the will and rejects no language as surplusage." *In re Hannach's Estate*, 2 A.2d 711, 713 (Pa. 1938). In sum, we can find nothing in the will to support a construction that Testator intended that the gifts to Kristina and her children be free and clear of the encumbrances. Accordingly, the specific bequests were subject to ademption in the event that the net sale proceeds of the property were insufficient to satisfy them.

Kristina's final claim asserts that Eric should be held liable for payment of all unpaid taxes, expenses and claims of the estate "for various misdeeds and malfeasance and for his contempt of and failure and refusal to comply" with the stipulated settlement set forth in Judge Blackwell's September 17, 2013 order. Kristina also argues that Eric should be responsible for her counsel fees. Upon review of the entire record in this matter, we conclude

that Kristina effectively abandoned her claim for surcharge and counsel fees and, accordingly, deem this allegation of error waived for purposes of appeal. In the alternative, Kristina presented no evidence that Eric's stewardship caused a loss to the estate, thus warranting a surcharge.

Eric filed his First and Partial Account on August 5, 2013. On September 9, 2013, Kristina filed objections in which she alleged that Eric failed to properly report, collect, or value numerous assets of the estate. She also alleged that he diverted certain estate funds to his personal use. On September 17, 2013, Judge Blackwell held a hearing on, among other things, Kristina's objections to the account. Kristina's counsel called Eric as a witness and questioned him regarding the funding of the trusts for Kristina and the grandchildren, an eviction action taken by the estate against Kristina over unpaid rent on the Riddle Road property, and Eric's conveyance of the Mt. Pisgah Road property to himself.[5] Following a lunch recess, court returned to session and Judge Blackwell read into the record the purported settlement reached by the parties. *See* Orphans' Court Order, 9/17/13. Pursuant to that agreement, Eric resigned as executor.

Thereafter, Attorney Mills became administrator d.b.n.c.t.a and, on January 13, 2015, filed his Second and Final Account. In her objections to that account, the lone issue Kristina raised was her contention that the estate

---

[5] Eric testified that he had conveyed the property to himself in an attempt to obtain a loan on the property to pay certain debts of the estate. The property was ultimately transferred back to the estate.

should be distributed in accordance with Judge Blackwell's September 17, 2013 order detailing the purported settlement of the parties. We note that this order provided that each party would bear its own fees. Kristina did not raise any claims for surcharge or attorney's fees against Eric.

From that point forward, the sole position taken by Kristina in this litigation was that the September 17, 2013 order should be enforced. However, after numerous attempts by Judge Kennedy to resolve the outstanding differences between the parties with respect to the terms of the settlement agreement, the court issued its adjudication of Attorney Mills' account in which, as discussed **supra**, the court set aside the agreement and ordered the properties sold.

Kristina now attempts, for the first time since 2013, to revive her claim for surcharge before this Court on appeal.[6] We conclude that, in failing to

---

[6] We acknowledge that the posture of this case in the months and years after the settlement was purportedly reached, in which the focus of the court and the parties was on finalizing the agreement and not on litigating the underlying issues raised in the objections to Eric's account, was such that there arose no real opportunity for Kristina create a further record on her surcharge and fee claims. However, by the time Attorney Mills filed his account in January 2015, it should have been apparent to the parties that a final settlement might never be achieved, and that they might ultimately revert back to their respective positions prior to September 17, 2013. Indeed, Judge Kennedy made it clear to the parties in his September 26, 2014 order that, if they were unable to resolve their disputes, he would "order the property sold, and the monetary proceeds would be divided according to the will[.]" Order, 9/26/14. Despite this clear warning from the court that it might set aside the purported settlement, Kristina failed to preserve her surcharge claim by raising it in her objections to Attorney Mills' account. Rather, Kristina persisted in focusing solely on her claim for enforcement of the settlement agreement. For this reason, we believe a finding of waiver is appropriate.

- 22 -

pursue her claim for surcharge and/or fees in the intervening four years, Kristina abandoned it and has, as a result, waived it for purposes of appeal. Kristina's abandonment of the claim, in favor of her exclusive pursuit of enforcement of the purported settlement agreement, resulted in the Orphans' Court not being given an opportunity to rule on the claim. Accordingly, appellate review is severely hampered, if not impossible. **See** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

Moreover, even if the claim were not waived, Kristina presented no evidence at the September 17, 2013 hearing that would support the imposition of a surcharge. It is well-settled that a party who seeks to impose a surcharge against an executor for mismanagement of an estate bears the burden of proving such mismanagement. **Estate of Campbell**, 692 A.2d 1098, 1104 (Pa. Super. 1997). Because counsel's brief examination of Eric at the September 2013 hearing produced no evidence that the estate sustained a loss as a result of Eric's administration, Kristina's surcharge claim would fail on its merits.

We now turn to the claims raised by Eric in his appeal. Eric first claims that the Orphans' Court erred in denying his petition for declaratory judgment seeking a ruling that: (1) the Testator's bequests to Kristina and her children were specific, and not demonstrative, legacies and (2) that the proceeds of sale of the Beaver Street property must be used to pay the secured debt attached to it. We have already addressed this claim in disposing of Kristina's

appellate issue number one and concluded that Testator's gifts to Kristina and her children were specific bequests and that the proceeds of sale must first be used to satisfy the secured debt prior to the payment of the bequests. Accordingly, we need not address this issue further.

Eric next asserts that the court erred in ordering that all real estate be sold, contrary to the directive in the will that only the Beaver Street property be sold and the remainder of the real property be distributed to Eric as residuary beneficiary. Eric argues that the court did not possess the power to unilaterally order real estate belonging to the estate to be sold. He bases his argument on section 3353 of the PEF Code,[7] which Eric claims requires that the personal representative petition the court for an order to sell real estate, which he asserts was not done in this case. He also argues that the Orphans' Court should have given the heirs the opportunity to either show that any

---

[7] Section 3353, governing sale by order of court, provides as follows:

> When the personal representative is not authorized to do so by this title or is denied the power to do so by the governing instrument, if any, or when it is advisable that a sale have the effect of a judicial sale, he may sell any real or personal property of the estate, including property specifically devised, at public or private sale, or may pledge, mortgage, lease, or exchange any such property, or grant an option for the sale, lease, or exchange of any such property, under order of the orphans' court division of the county where letters testamentary or of administration were granted, upon such terms and upon such security and after such notice as the court shall direct, whenever the court shall find such sale, pledge, mortgage, lease, exchange, or option to be desirable for the proper administration and distribution of the estate.

20 Pa.C.S.A. § 3353.

claims against the estate were not well-founded, or to pay the debts and avoid a sale.

Attorney Mills filed his account on January 13, 2015. Subsequent thereto, the court encouraged the parties to resolve their dispute regarding Judge Blackwell's September 17, 2013 "settlement" order. The parties were unable to reach an agreement. Accordingly, on October 14, 2015, Attorney Mills, as administrator d.b.n.c.t.a., filed a motion for adjudication of his account, wherein he indicated a balance on hand of $755.52. Attorney Mills noted outstanding debts of the estate, including taxes, attorneys' fees, and a claim against the estate by Eric Riddle, all totaling over $71,000. As the estate possessed insufficient cash on hand to satisfy these debts, Attorney Mills requested that the real estate be sold and the proceeds used for that purpose.[8] The court issued its adjudication accordingly and ordered the remaining proceeds of the Mt. Pisgah Road Property, if any, paid to Eric and those of the Riddle Road Property, if any, paid to Kristina.

Because the estate possessed insufficient cash to pay its debts, the Orphans' Court committed no abuse of discretion in ordering the real estate sold in order to satisfy those outstanding debts. Eric argues that he should have been given the opportunity to pay the debts and avoid a sale. However,

---

[8] We note that, pursuant to section 3351 of the PEF Code, the personal representative need not seek permission of either the court or beneficiaries to sell real estate when, as here, that real estate is not specifically devised and the will does not otherwise preclude him from doing so. *See* 20 Pa.C.S.A. § 3351.

this matter has been ongoing for years and Eric had every opportunity to demonstrate his ability to obtain financing in order to avoid the sale. Indeed, at the September 17, 2013 hearing, Eric testified that he was unsuccessful in obtaining the financing necessary to do exactly that:

Q: And so why was the [Mt. Pisgah Road] property transferred to your individual name?

A: In an effort to obtain some kind of loan to satisfy the debts of the estate.

Q: Well, why would that help with the loan?

A: That's the only thing with equity in the estate, so I attempted to get a loan using that property as collateral so that I could put money back into the estate personally because the estate is cash poor and doesn't have enough money to satisfy its debts.

. . .

Q: So the property was transferred into your individual name in an attempt to get a loan and then fund the trust for the children?

A: And all the other expenses of the estate, debts of the estate.

. . .

Q: Okay. Did you, in fact, attempt to get a loan?

A: I did.

Q: What bank or financial institution did you attempt to get a loan from?

. . .

A: Northwest Bank, Citizens Bank, AgChoice and I employed a retired bank manager to try to attempt to get me private funding [after the three banks turned him down].

. . .

Q: Okay. And why did they turn you down for a loan?

A:  Because its farmland, and they can't use farmland as a home equity – use it as collateral for a home equity loan.  It can only be a commercial loan.

Q:  And why wouldn't they give you a commercial loan?

A:  Because the estate and me personally, I personally am in such – have carried so much debt from absorbing all of my father's debt while he was alive[.]

N.T. Hearing, 9/17/13, at 75-78.

Based on the foregoing, it is apparent that Eric was in no position to obtain the financing necessary to enable him to satisfy over $71,000 in estate debt and avoid the sale of the real estate.  Accordingly, the court acted within its discretion to order the properties sold to satisfy the debts of the estate.[9]

Eric next argues that the court abused its discretion in removing him as executor without cause, "especially when [he] complied with the directions and advice of his then-attorney."  Appellant's Brief of Eric Riddle, at 4.  This claim is both waived and meritless.

_____

[9] The scheme of distribution requested by the administrator d.b.n.c.t.a. in his motion for adjudication and ultimately ordered by the Orphans' Court in its adjudication is not in accordance with the terms of the will.  Rather, it appears that an attempt was made to partially enforce the terms of the settlement agreement by giving Eric and Kristina the proceeds, if any, of the property each was to receive under the agreement.  This, essentially, would provide Kristina with a windfall if any proceeds remained after the sale of the Riddle Road Property, as under the will, Kristina was only entitled to the net proceeds, if any, from the sale of the Beaver Street Property.  The proceeds of the sale of that property were insufficient to fund any bequest to Kristina.  However, Eric has not specifically challenged the award to Kristina under the adjudication.

Eric's removal was negotiated as part of the settlement agreement memorialized in Judge Blackwell's September 17, 2013 order. While Judge Kennedy subsequently set aside the agreement as it related to the distribution of the Mt. Pisgah Road and Riddle Road properties, Eric's removal was promptly effectuated in accordance with what was then presumed to be an enforceable agreement. Eric was present in court at the time his agreement to be removed was read into the record and he did not raise any objection. **See** N.T. Hearing, 9/17/13, at 90-91. Moreover, although an order removing a personal representative is immediately appealable under Pa.R.A.P. 342(a)(5), Eric did not file an appeal to this Court at the time. Indeed, Eric never raised any objection to his removal before the trial court, only doing so for the first time when this appeal was filed, approximately 2½ years after his removal. Because Eric failed to timely appeal the order removing him as executor, because he never challenged his removal in the trial court, and because he agreed to his removal, his claim is untimely, waived, and meritless.

Next, Eric claims that the Orphans' Court erred in accepting the settlement "after conferring in chambers outside the presence of Eric Riddle" and when his counsel at the time only represented him in his capacity as executor. This argument is meritless. First, Judge Kennedy set aside the settlement agreement as it related to the division of the properties, rendering much of Eric's claim moot, and we have already concluded that the court was within its discretion to do so. **See supra**, at 10-14. Furthermore, we reiterate

that Eric was present in the courtroom at the time the agreement was read into the record and raised no objection, either to the substance of the agreement or the status of his legal representation. Second, to the extent Eric's complaint relates to his removal as executor, we have already determined the claim is untimely, waived, and meritless. *See supra* at 27-28. Eric is entitled to no relief.

Eric next alleges that the Orphans' Court erred in failing to require Kristina's counsel, John G. Bergdoll, Esquire, to remain financially liable to him "for any monetary losses sustained by Eric . . . because of the improper mortgage placed by Attorney Bergdoll on all of Decedent's property merely to protect his own attorney fees[,] for which the [e]state was not responsible." Appellant's Brief of Eric Riddle, at 4. Eric also challenges the $50,000 claim against the estate filed by Attorney Bergdoll, arguing that Kristina alone is responsible for her attorney's fees. This claim is waived as to the first part and meritless as to the second.

First, Judge Kennedy's adjudication awarded no fees to Attorney Bergdoll. Accordingly, the fact that Attorney Bergdoll may have at some point filed a claim against the estate for payment of those fees is moot, as the court did not, ultimately, award them. As to the matter of the security interest allegedly taken by Attorney Bergdoll on the estate's real property, the record is insufficient to enable us to determine the nature, propriety, or current status of that mortgage. The certified record does not contain a copy of the mortgage instrument. Eric did not at any time during the course of this litigation petition

the court for removal of the mortgage, nor did he attempt to quantify the damages he allegedly sustained as a result of the mortgage. Although he makes reference to the mortgage in his "Cross-Exceptions to Order Entered June 10, 2015," he merely demands that Attorney Bergdoll "be ordered to remain financially liable to Eric Riddle for any monetary losses" sustained as a result of the mortgage. Nowhere in the record do we find any proof – or even an offer of proof – of an actual monetary loss sustained, either by Eric Riddle or the estate, as a result of the mortgage in favor of Attorney Bergdoll. In sum, because Eric failed to sufficiently develop this claim in the court below, we are constrained to conclude that it is waived.[10]

Finally, Eric alleges that the Orphans' Court erred by reducing the amount of reimbursement awarded to him for advancement of estate expenses. He contends that, while the Second and Final Account indicates that Eric spent $14,225.86 of his own funds for estate expenses and $43,271.07 for debts of the decedent, the court only awarded him the sum of $31,866.06. This claim is meritless. On February 9, 2015, Eric submitted a claim against the estate in the amount of $31,866.06. This is the very sum that was awarded to Eric in the court's adjudication of November 4, 2015. Eric provides no substantiation for any additional sums requested, other than a vague statement that his February 9, 2015 Notice of Claim "did not include all expenses." Appellant's Brief of Eric Riddle, at 47. Eric received exactly what

_____

[10] We note further that the court did not address or even mention the mortgage in its adjudication.

- 30 -

he sought, has not provided proof of his entitlement to anything more and, accordingly, is entitled to no relief.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/26/2018